343 So.2d 1047 (1977)
STATE of Louisiana
v.
Thomas Louis PHILLIPS.
No. 58429.
Supreme Court of Louisiana.
March 7, 1977.
*1049 Robert J. Zibilich, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Timothy W. Cerniglia, Asst. Dist. Atty., for plaintiff-appellee.
SUMMERS, Justice.
On the morning of October 8, 1974, Gary Eugene Solomon was driving his car to school in the City of New Orleans. As he proceeded he observed a blue flashing light on a vehicle behind him. Thinking the police were trying to stop him, Solomon pulled over to the side of the street. The defendant, *1050 Thomas Louis Phillips, driver of the following car, pretending to be a police officer, got out of the following car and demanded Solomon's license and registration papers. Defendant then searched Solomon's car, handcuffed him and put him in defendant's car.
With Solomon handcuffed in the car, Phillips drove around for some time. After a while he brought Solomon to a hotel room. Subsequently a $250,000 ransom demand was made on Solomon's father. The next day Phillips instructed the victim's father to go to a pay phone at a designated drugstore, where Phillips, with the victim in custody, called him from a gas station pay phone. As Phillips was finishing the call, he was captured by F.B.I. agents, and the victim was freed.
An indictment returned by the Orleans Parish Grand Jury charged that Phillips "did forcibly seize and carry off the person of one Gary N. Solomon with the intent to force some other person to give up $250,000.00 in order to secure the release of the said Gary N. Solomon." The indictment was based upon Article 44 of the Criminal Code relating to aggravated kidnapping.
After a defense plea of not guilty and not guilty by reason of insanity, trial by a jury of twelve resulted in a verdict of "guilty." Phillips was sentenced to serve the remainder of his natural life in the custody of the Department of Correction with credit for time served. Nine of the eighteen assignments of error reserved are urged on this appeal. Defendant is an indigent represented by counsel appointed by the Court.

Assignment 1
In a supplemental application for bill of particulars, defense counsel sought copies of all statements made by prosecution witnesses. The Court is informed by the defense brief that the application was particularly directed to statements which may have been made by the victim and his father. The State answered that the defense was not entitled to this information, and the trial judge found the answer to be satisfactory. The ruling is assigned as error.
It is argued in support of this assignment of error that the sixth amendment to the United States Constitution guarantees an accused the right to cross-examine and confront witnesses against him. Because defense counsel was unable to discover the statements of these witnesses, it is contended that he was unable to adequately prepare a defense. As a result, the defense was unfairly surprised, and defendant was effectively denied his sixth amendment right.
No special need is shown for the production of the statements, nor does the record indicate that the statements are exculpatory, or, in fact, that such statements exist. And we feel that in some instances the preliminary hearing provides an opportunity for the defense to interrogate the State's witnesses and thereby avoid surprise. In addition, the defendant has an opportunity to conduct an independent investigation and to interview the witnesses.
This Court has taken the position, shared by a substantial majority of jurisdictions, that pretrial disclosure of a potential witness' statement should not be granted even upon a showing of particular need. Decisions on pretrial discovery generally support this proposition. State v. Huizar, 332 So.2d 449 (La.1976); State v. Redfud, 325 So.2d 595 (La.1976); State v. Kado, 300 So.2d 461 (La.1974); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967).
The confrontation clause of the sixth amendment was designed to advance the practical concern for the accuracy of the truth determining process in criminal trials. Its object was to guarantee that the fact-finder has adequate opportunity to assess the credibility of witnesses. It is the right of cross-examination which the amendment aims to assure. It is face to face confrontation at trial which is involved in this guarantee. Bruton v. U.S., 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). There is, therefore, no deprivation of this right by the denial of a pretrial disclosure of statements of the prosecution's witnesses. *1051 See State v. Ivey, 442 S.W.2d 506 (Mo. 1969); cf. Winkle v. State, 488 S.W.2d 798 (Tex.Ct.App.1972).

Assignment 3
In a pretrial petition based on Articles 739-40 of the Code of Criminal Procedure[1] the defense requested the issuance of subpoenas and writs of habeas corpus ad testificandum for eight individuals incarcerated in federal prisons in Texas, Missouri, New Mexico, Georgia and Oklahoma. The petition alleged only that these prospective witnesses would be called to testify and their testimony would be relevant and material.
A motion by the State to deny defendant's request set forth that defendant's petition failed to show that the testimony of these witnesses would be relevant and material; that the request was frivolous and was intended merely to delay the trial on the merits; and that the expense for transporting the prisoners was estimated by the U. S. Marshal to be $4,000.
A hearing was held in chambers on defendant's petition out of the presence of the State's attorneys. The evidence adduced revealed that the prospective witnesses, most of whom were former inmates with defendant while he was incarcerated in the House of Detention, would testify to defendant's irrational and unexplainable action in prison. According to defense counsel, this evidence would bolster defendant's plea of "not guilty and not guilty by reason of insanity."
Thereafter when the Court rendered its decision sustaining the State's motion, the trial judge filed the transcript of the hearing testimony into the record of this case. The transcript contained his reasons for denying the subpoenas. In addition, he adopted the State's brief as part of his reasons. He was of the opinion that none of defendant's fifth amendment rights were violated, expressing the opinion that the relevancy of fifth amendment rights was "somewhat questionable." The defense objected to this ruling and applied to this Court for review. The application was denied, the Court being of the opinion that "The showing made does not warrant the exercise of this Court's supervisory jurisdiction. The transcript of evidence satisfies this Court that there is no error in the ruling of the trial judge." See State v. Phillips, La., 322 So.2d 769 denial dated November 11, 1975.
In brief to this Court counsel for defendant contends that Articles 739 and 740 of the Code of Criminal Procedure, and the comments thereto, specifically provide for a "private inquiry" by the Court into the facts surrounding the requested witnesses; therefore, filing the transcript of that inquiry into the record violates the privacy contemplated by those articles. This is so, according to the argument, for by filing the transcript into the record the prosecution is apprised of what transpired at the hearing, *1052 defeating the primary purpose of Articles 739 and 740, which is designed to protect the defendant against disclosure of his defense to the State prior to trial.
A consideration of Articles 739 and 740, and the comments, reveals that the "private inquiry" prescribed "is intended to give the judge full discretion in ordering or refusing to order the attendance of witnesses from other parishes after reviewing the facts of the case." (emphasis added). Comments, Art. 740. It is also evident that the trial judge should file his reasons for refusal of the subpoenas to permit appellate review. Id.
Thus, from this record, it is apparent that the procedure prescribed in holding the "private inquiry" and the action of the trial judge in filing his reasons in the record is in keeping with the requirements of Articles 739 and 740. Only the filing of the testimony obtained at the "private inquiry" is subject to question under the defense contention that this action has the effect of disclosing the defendant's defense to the State prior to trial.
The question to be answered before this conviction is reversed is whether the filing of the transcript into the record is such an error that it has probably resulted in a miscarriage of justice, is prejudicial to the substantial rights of the accused, or constitutes a substantial violation of a constitutional or statutory right. La.Code Crim. Proc. Art. 921. In our view the error does not warrant reversal.
The requirement of Article 740 that the judge shall state his reasons in writing for not issuing the subpoenas and that the written reasons shall become part of the record conceivably presents some difficulty in execution. Especially is this apparent when those reasons, as in this case, must, in order to be adequate for appellate review, recite the substance of the testimony of the witnesses who are sought to be subpoenaed. How else can the judge's reasons serve as a basis for review on a determination that the witness is not "indispensable to the trial or hearing," or that the testimony of the witness is "relevant, material, and not cumulative"?
A review of the defendant's testimony at the "private inquiry" convinces the reader that the trial judge must have concluded that the testimony of the witnesses would be "cumulative" and as such was not "indispensable" to the trial on the issue of defendant's insanity at the time of the commission of the offense. Only the defendant's uncorroborated testimony was produced at the hearing to support the claim that his fellow inmates would testify to his irrational behavior while incarcerated. Even if the proposed testimony was given, it would add little to the facts bearing upon defendant's sanity in view of the testimony of other witnesses who testified to the same effect.
Aside from the defendant's plea of insanity, the State was well aware of the defense to be advanced at the trial. Before the filing of the hearing transcript, defendant had been examined by two sanity commissions involving six doctors. Furthermore, in advance of the private inquiry, before the State's attorney voluntarily excused himself from the hearing, he stated for the record that none of the witnesses defendant was seeking would shed light upon the facts surrounding the offense, all would testify in connection with the defense of insanity. It was the prosecution's stated position at that time that the out-of-state witnesses were fellow inmates of defendant at the same time as the in-state witnesses, who would testify on the same subject, and, therefore, the testimony of the out-of-state witnesses would be cumulative. The State's attorney urged the trial judge to inquire into this contention as he would not be present to cross-examine.
Under these particular circumstances the Court is of the opinion that the filing of the transcript did not amount to a substantial violation of Article 739 or 740 and that no miscarriage of justice resulted. The substance of the defense was well known to the State, and the particulars disclosed at the hearing would not contribute to that defense. La.Code Crim.Proc. Art. 921. See *1053 also State v. Chavers, 294 So.2d 489 (La. 1974) and State v. Square, 257 La. 743, 244 So.2d 200 (1971).

Assignments 2, 4 and 17
Error is alleged to have been committed when, in the hearing on the State's motion to deny defendant's request for subpoenas, the trial judge inquired into the nature of the testimony the defendant sought to elicit from in-state witnesses.
By questioning, the trial judge ascertained from the defendant that the prospective witness James S. Brown, a local witness, would testify that he saw defendant do various things that he didn't remember and that he had told Brown he was somebody else and "different things" in the House of Detention when they were both inmates there.
Defense counsel objected to any inquiry into the testimony defendant's requested local witnesses would give. He argued the defendant was entitled to twelve witnesses on a felony trial notwithstanding the nature of their testimony. Cumulative testimony within the meaning of Article 739 of the Code of Criminal Procedure, it was asserted, had reference to evidence which was cumulative between those witnesses in excess of the number allowed under Article 738.[2] The same argument is advanced with respect to the out-of-state witnesses. Their testimony must also be cumulative between themselvesthat is, between the out-of-state witnesses without reference to any other evidence on the subject, to fall within the intendment of Article 740. Hence, it is said, there was no license to inquire into the testimony of those witnesses within the twelve allowed by law.
The trial judge was of the opinion that he would be unable to determine whether the testimony of the out-of-state or excess local witnesses would be cumulative, unless he had an idea what the other witnesses, who were local, would testify on the same subject. Accordingly, he overruled the defense objection. Assignment 2 was reserved.
The ruling of the trial judge is correct. The trial judge's inquiry into the testimony defendant's local witnesses would give did not result in the limitation of the number of defendant's local witnesses at the expense of the parish under the authority of Article 738 of the Code of Criminal Procedure. To the contrary, in his ruling the trial judge said he would allow the defense additional witnesses within the State if needed.
An essential aim of the private inquiry is for the trial judge to determine whether the testimony of the witnesses "is relevant and material and not cumulative." La.Code Crim.Proc. Art. 739. While the defense brief asserts that the testimony of the witnesses is not cumulative unless it is "cumulative as between themselves," this is not the test. As we understand the problem, it is the obligation of the trial judge to ascertain whether testimony of extra or out-of-state witnesses will be cumulative of other testimony or evidence, whether it involves local and out-of-state witnesses or other combinations of testimony or tangible evidence.
Cumulative evidence is generally understood to be additional evidence of the same kind tending to prove the same point as other evidence already given, or, as in the context of this issueevidence to be given. Put another way, cumulative evidence is that which strengthens a party's position on a conflict already existing in the evidence produced at the trial. Foster v. Rosamond, 20 Ala.App. 99, 180 So. 334 (Ala.App.1938); Redmond v. Marshall, 162 Miss. 359, 137 So. 733 (1931); 32A C.J.S., Evidence § 1016; 29 Am.Jur.2d, Evidence §§ 4, 256; Black's Law Dictionary (4th ed., 1951). It is noted, moreover, that some of the witnesses subpoenaed by defendant to testify on the issue of insanity were not called to the stand.
*1054 Assignment 4 was reserved to the ruling of the trial judge granting the State's motion to deny defendant's request for subpoenas of out-of-state witnesses.
In view of the fact that a defendant pleading insanity must affirmatively prove his insanity by a preponderance of the evidence, defendant argues he should be given the means to effectively carry this burden. To limit an indigent defendant's access to witnesses while not so limiting a non-indigent, whose finances enable him to obtain more witnesses at his own expense, is a denial of due process of law and equal protection of the laws as guaranteed by the United States Constitution.
An indigent accused has no constitutional right to the unrestricted exercise of all the measures money can buy in defense of the charges against him. The Constitution does guarantee, however, that he be provided with those rights and facilities which are essential to a fair trial. In the area of the right to subpoena witnesses, Articles 738, 739 and 740 do afford an indigent defendant a reasonable assurance that he may obtain a fair trial. The standards adopted by these Articles meet the test of due process and equal protection of the laws guaranteed by our State and Federal Constitutions.
This issue was considered before this trial on defendant's application to this court to review the ruling under our supervisory jurisdiction. As noted in connection with our opinion on Assignment 3, no error was found in the ruling of the trial judge at that time, and that ruling is affirmed.
Assignment 17 is not argued and no opinion is required on the issue presented.

Assignments 5, 15, 16 and 18
The defense has consolidated these assignments for argument on appeal for they all primarily involve the question whether this trial should have been conducted as a capital case.
Assignments 5, 15 and 16 pertain to defendant's motions for mistrial based upon allegations that the jury should have been sequestered in a trial involving a charge of aggravated kidnapping under Article 44 of the Criminal Code; and because television and newspaper publicity of a kidnapping in which the victim was murdered in Gulfport, Mississippi during the week of the trial made sequestration necessary to shield the jury from the prejudicial influence that publicity would produce. Assignment 18 involves a defense objection to the judge's denial of a special charge to the jury that all twelve jurors must concur in the verdict.
As the narrative of facts indicates, the victim was freed unharmed at the time of arrest. At the trial, the State stipulated that the victim was released unharmed. Article 44 of the Criminal Code defines the crime of aggravated kidnapping. The penalty provision for this crime in that Article reads thus:
"Whoever commits the crime of aggravated kidnapping shall be punished by death; provided that if the kidnapped person is liberated unharmed before sentence is imposed then the sentence of death shall not be given but the offender shall be sentenced to life imprisonment at hard labor."
Thus Article 44, in effect, sets out two grades of aggravated kidnapping and prescribes a separate penalty for each. If the victim is harmed during commission of the crime the death sentence must be imposed, and the trial of such a case is governed by the rules applicable to capital cases. However, if, as in the instant case, the victim is freed and unharmed before trial, the case is a non-capital felony and should be tried in accordance with the procedure prescribed for offenses involving mandatory life imprisonment at hard labor. State v. Sewell, La., 342 So.2d.156 (Decided January 24, 1977). As we held in State v. Sewell, the lesser penalty Article 44 prescribes is designed to deter the kidnapper from inflicting harm upon the victim. And, as we held, the lesser penalty applies whether the victim is liberated unharmed at the instance of the offender or otherwise.
It was understood at the outset of these proceedings that the trial would be *1055 conducted as a non-capital case involving life imprisonment. In addressing the prospective jurors at the time of the voir dire examination, the State's attorney told them:
"The offense for which Mr. Phillips is being tried is an offense that is punishable by life imprisonment because of the fact Gary Solomon was freed or released, was liberated, before there's any possibility of sentence being imposed. The fact that it is a non-capital offense means that you won't be sequestered or locked up if you are selected to serve as a juror."
Defense counsel also addressed the assembled prospective jurors as a preliminary to the voir dire examination. In the course of this presentation he said:
"As Mr. McMann [State's attorney] told you, Mr. Phillips is charged with aggravated kidnapping. He also told you that that is not a capital offense because the alleged victim was returned unharmed, was released or liberated unharmed. He did also tell you that the crime of aggravated kidnapping carries with it a mandatory penalty of life imprisonment, which we all understand. No one needs to be sequestered and the judge has determined that he will not sequester you. The law does not require him to do so. After we have chosen the jury today, you all will be released under the orders of the judge and will return on Thursday."
Again, the State's attorney told the prospective jurors:
"Now, because the victim was released now, the statute reads: Whoever commits the crime of aggravated kidnapping shall be punished by death, a capital case, except when the person is released unharmed. In other words, if he is not killed or he is not seriously injured then it is not a capital case. That's the position we're in today. That's why each of you will be able to go home, should you be picked, until we resume Thursday."
In keeping with the understanding clearly expressed by counsel for the State and the defense, after the jury was selected and sworn, the trial judge permitted them to go home for the night without a defense objection. The objections arose later during the trial.
This Court's recent decision in State v. Sewell, supra, is controlling here and the trial in the instant case was properly conducted in accordance with the procedure prescribed for non-capital felonies requiring a mandatory sentence of life imprisonment. Sequestration was not therefore mandatory and a unanimous jury verdict was not required.
Defense counsel's second argument on the sequestration issue is based upon the contention that the trial judge abused his discretion in not sequestering the jury during the trial. The claim is that the local newspaper and television stations had given wide publicity to a kidnapping in which the victim was murdered, the kidnapping having occurred in Gulfport, Mississippi during the week of the trial. According to the defense contention this publicity was prejudicial for it would tend to confuse the jury into believing the reported incident involved this defendant.
Article 791[3] does vest discretionary authority in the trial judge to sequester the jury "at any time." However, the showing here is based upon a tenuous theory, inconsistent with the facts presented at the trial, and the argument fails to take into consideration the jury's ability to separate the facts of the Mississippi incident from the case before them. This contention is therefore untenable.
For the reasons assigned, the conviction and sentence are affirmed.
*1056 TATE, J., assigns concurring reasons.
DENNIS, J., concurs, disagreeing with the treatment of assignment No. one.
TATE, Justice, concurring.
I concur in the majority opinion. However, with respect to Assignment No. 1, the majority states that pre-trial disclosure of a witness's statement should not be granted even upon a showing of particular need. This statement must be read in the context of the present decision and of the other decisions cited: After conviction, the failure to require pre-trial disclosure will not be cause for reversal, unless the record shows that the accused has been denied a fair trial thereby, such as by the failure of the state upon request to disclose statements containing Brady information favorable to the defendant. See Davis v. Heyd, 479 F.2d 446 (CA 5, 1973), annulling conviction in State v. Davis, 259 La. 35, 249 So.2d 193 (1971).
Nevertheless, even beyond the requirement of disclosure in such circumstances (upon penalty of reversal upon failure to accord it), the trial court has inherent discretion to require disclosure of pre-trial statements in the interest of fairness and of expeditious trial of the issues of a criminal prosecution. In the exercise of our supervisory jurisdiction, we have in quite a few instances refused to disturb the trial court's discretion in this regard, which is in accord with the practice in many American jurisdictions and with the recommendations of most of the recent organized studies of the criminal justice system of America.
The statement in the majority opinion must be understood in this context of the actual practice of this court and of many judicial districts of this state.
NOTES
[1] "Art. 739. Indigent defendant:

"If a defendant is indigent and unable to pay for witnesses desired by him in addition to those summoned at the expense of the parish, he shall make a sworn application to the court for the additional witnesses. The application must allege that the testimony is relevant and material and not cumulative and that the defendant cannot safely go to trial without it.
"The court shall make a private inquiry into the facts, and if satisfied that the defendant is entitled to the privilege, it shall render an order permitting the defendant to subpoena additional witnesses at the expense of the parish. If the application is denied, the court shall state the reasons for the denial in writing, which shall become part of the record.
"Art. 740. Method of obtaining a witness from another parish
"A defendant who wishes to have a subpoena issued for the attendance of a witness who is not residing in the parish where the trial or hearing is held shall file a written application with a supporting affidavit stating the address and parish wherein the witness resides. The application shall state that the testimony of the witness is relevant, material, and not cumulative. The court shall make a private inquiry into the facts of the case to determine whether the witness is indispensable to the trial or hearing. If satisfied, the court may order the subpoena issued. If the court finds that the subpoena should not issue, it shall state its reasons in writing, which shall become a part of the record. Payment of the expenses of obtaining witnesses under the provisions of this article shall be governed by Article 738 and Article 739."
[2] "Art. 738. Number of witnesses allowed

"At a trial or hearing, each defendant in a misdemeanor case shall be allowed to summon six witnesses at the expense of the parish, and in a felony case twelve witnesses. A defendant shall have the right of compulsory process for additional witnesses at his own expense."
[3] "Art. 791. Sequestration of jurors and jury

"A jury is sequestered by being kept together in charge of an officer of the court so as to be secluded from outside communication.
"In capital cases, after each juror is sworn he shall be sequestered.
"In noncapital cases, the jury shall be sequestered after the court's charge, and may be sequestered at any time upon order of the court."