CALOGERO, Justice.
Darlene Robertson was charged by separate bills of information with possession of marijuana in violation of R.S. 40:966 and criminal mischief in violation of R.S. 14:59. After separate bench trials, she was found guilty of both charges. For the possession of marijuana conviction, she was sentenced to pay $300 and for the criminal mischief conviction, she was sentenced to serve sixty days in the parish prison. On application of defendant, we granted writs and specifically requested argument on assignments eleven and twelve. We have reviewed the assignments and arguments on the possession of marijuana conviction and find no reversible error. We do find merit, however, in assignments eleven and twelve, relative to the criminal mischief conviction and therefore reverse that conviction and sentence of defendant.
Defendant in assignments eleven and twelve contends that the trial judge erred in not granting her motion for a directed verdict. In that motion she argued that the state failed to prove that defendant had the requisite intent to commit the crime and/or that she gave a false report or complaint to an officer of the law.
*916 The charge of criminal mischief arose from the following facts. Defendant who was residing in an apartment in Sterling-ton, Louisiana with her boyfriend wrote several notes threatening the boyfriend with kidnapping charges if he did not take her home to Monroe. She signed the name of Ray Cook, a Ouachita Parish deputy and placed the notes in and around the apartment. When he found the notes, the boyfriend brought them to the sheriff’s office which thereupon began an investigation. When questioned about the notes, defendant claimed that she had on several occasions seen deputies around the apartment, and that at least on one occasion deputies had entered the apartment through a window. She stated that it was after the deputies entered the apartment that she noticed the notes.[1] A very brief time elapsed before defendant in a tape-recorded statement recanted that story and admitted that she had written and placed the notes and that no deputies had been in the apartment.[2] At defendant’s trial, Deputy Calhoun, the investigating officer, testified that the charge against defendant was based upon the notes defendant admitted having written and not the story she gave at the outset of the interrogation.
Louisiana Revised Statute 14:59 defines criminal mischief as “the intentional performance of the following acts:
[[Image here]]
(5) Giving of any false report or complaint to a sheriff, or his deputies, or to any other officer of the law relative to the commission of, or an attempt to commit a crime . . . .”
If as Deputy Calhoun testified the charge was based on the handwritten notes to the boyfriend then there was no evidence of defendant’s “giving of any false report or complaint to a sheriff, or his deputies . .” The notes were written to the boyfriend and left for him to find. The notes, hardly a “report” or “complaint,” were not sent or given to the sheriff or intended for him. Moreover, although it might be inferred from the substance of the notes that the defendant was being kidnapped, the notes do not “report” or “complain” to the sheriff that a crime had been or was being committed. The notes simply purported to be warnings from a deputy designed to prompt defendant’s boyfriend to take her back to Monroe.
Even if the basis of the criminal mischief charge was the story defendant first told Deputy Calhoun when he questioned her about the notes, defendant cannot be found to have given a false report or complaint to the sheriff. The most that can be said is that she lied initially when interrogated, perhaps to avoid discovery of her having forged Deputy Cook’s signature, and that she quickly recanted, admitting in her only formal statement that she wrote the notes and that no deputies had entered the apartment.
Louisiana Code of Criminal Procedure Article 778 provides for a judgment of acquittal in a bench trial as follows:
“In a trial by the judge alone the court shall enter a judgment of acquittal on one or more of the offenses charged, on its own motion or on that of defendant, after the close of the state’s evidence or of all the evidence, if the evidence is insufficient to sustain a conviction.
If the court denies a defendant’s motion for a judgment of acquittal at the close of the state’s case, the defendant may offer its evidence in defense.”
In determining whether a trial judge erred in denying a defense motion for a *917 directed verdict (motion for a judgment of acquittal), this Court can find error in the denial of the motion and reverse the conviction only if there is no evidence presented of the crime charged or of an essential element thereof. State v. Reeves, 342 So.2d 605 (La.1977). In this case the state failed to prove that defendant gave “a false report or complaint to a sheriff, or his deputies.” Consequently the state produced no evidence and the motion for a directed verdict — judgment of acquittal — should have been granted.

Decree

For the foregoing reasons, defendant’s conviction and sentence on the charge of possessing marijuana is affirmed; defendant’s conviction and sentence of criminal mischief is reversed and set aside and the charge ordered dismissed.
POSSESSION OF MARIJUANA CONVICTION AND SENTENCE AFFIRMED; CRIMINAL MISCHIEF CONVICTION AND SENTENCE REVERSED.
SANDERS, C. J., dissents and assigns reasons.
DENNIS, J., concurs in part and dissents in part and assigns reasons.

. The first statement which defendant gave to Deputy Calhoun was neither written nor taped, and the second tape-recorded statement does not form part of the record. It was Deputy Calhoun’s testimony at trial that the first oral statement was to the foregoing effect.

. Defendant insists that the recantation took place during the same interrogation and within moments of the first oral statement giving the misinformation. The record, while not indicating the length of the interrogation nor whether it was interrupted, shows simply that the questioning began at 11:24 A.M. and that the recorded statement was taken at 2:17 P.M. on July 19, 1977.