408 So.2d 250 (1981)
STATE of Louisiana
v.
Edgar S. BOLTON.
No. 81-KA-0502.
Supreme Court of Louisiana.
November 16, 1981.
Rehearing Denied January 25, 1982.
*252 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., J. Carl Parkerson, Dist. Atty., Allen W. Helm, Lavalle Salomon, Asst. Dist. Attys., for plaintiff-appellee.
James D. Sparks, Monroe, for defendant-appellant.
*253 KLEES, Justice, Ad Hoc.[*]
The defendant, Edgar S. Bolton, was charged on August 14, 1979, by bill of information with aggravated crime against nature on a minor, in violation of La.R.S. 14:89.1[1], within the time period between March 1, 1979 and June 30, 1979. The defendant pled not guilty, filed a motion to suppress evidence, which was denied, and stood trial before a twelve person jury beginning on January 10, 1980. On January 11, 1980, ten of the twelve jurors reached a verdict of guilty as charged. On November 26, 1980, the trial court sentenced defendant to five years at hard labor. The defendant appeals his conviction, alleging nineteen assignments of error.
FACTS
From March, 1979 through June, 1979, the victim resided with his grandparents, twin brother Johnny, and step-brother, Kenneth, at 1402 Mack Street, Monroe, Louisiana. He was nine years old at the time. Edgar Bolton (Age 74), the defendant, moved next door with his wife, apparently in the fall of 1978. The three boys became friendly with the defendant, watched him upholster old chairs and sometimes worked for him, cleaning his house or workshop.
In March, 1979, the three boys were playing with some tadpoles on the front porch of defendant's house. The defendant came outside and pulled the victim inside. He then locked the front door, led the victim to the back bedroom, laid him on a bed, unzipped his own pants, made the victim suck his penis and stuck his penis in the victim. The victim's step-brother ran around to the back of the house and viewed this through the bedroom curtains. After this incident it appears the defendant performed various deviate sexual acts with the victim, including sticking his penis in him, making him suck his penis, caressing his genitals with the victim's hand and a vibrator and having him watch him ejaculate into a rubber hose attached to the vibrator. The defendant then offered the victim money if he would not tell his momma what they did.
MOTION TO REMAND
Defendant on September 29, 1981 filed a "Motion to Remand Pursuant to Article 854, Louisiana Code of Criminal Procedure," attaching a "Motion for a New Trial" which he filed in the District Court, alleging the existence of newly discovered evidence.
A verdict in this matter was rendered on January 11, 1980 and sentence was imposed on November 26, 1980. Defendant contends that the motion for new trial was timely filed under C.Cr.P. Arts. 851 and 853.
La. Code Criminal P. Art. 851 provides in pertinent part:

*254 The court, on motion of the defendant, shall grant a new trial whenever:
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty.
La.Code Crim.P. art. 853 provides in pertinent part:
When the motion for a new trial is based on ground (3) of Article 851, the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed or a motion for a new trial has been previously filed; but if an appeal is pending the court may hear the motion only on remand of the case.
Since more than one year has passed from the verdict date to the filing of the motion for new trial it is obvious that defendant's contention, that the motion for new trial was filed timely, is that it was filed within one year of sentencing.
As expressed above under La.Code Crim.P. Art. 853 the motion may be filed within one year after verdict or judgment of the trial court, although a sentence has been imposed... (Emphasis added) In State v. Blue, 64 So. 411, 134 La. 561 (La. 1914) this court defined verdict as:
The word "verdict" is derived from the Latin "veredictum," meaning a true declaration. It is the answer of the jury made upon any cause, civil or criminal, committed by the court to their examination. Whatever they sign beyond this is immaterial, and to be rejected. It is a very important act; it is the culmination of the trial, and embodies the conclusion of the jury upon the questions of fact litigated on the trial. It is the decision of the jury, and, as such, it must stand if it is clear, intelligible, and responsive to the charge.
State v. Jackson, 362 So.2d 766 (La.1978) and State v. Molinario, 383 So.2d 345 (La. 1980) both refer to new trial motions filed "within one year after verdict" although they do not deal directly with the issue presented herein.
As used in La.Code Crim.P. Art. 853, the verdict or judgment of the trial court indicates a finding of guilt or innocence and in our opinion does not include sentencing. Accordingly we deny the motion to remand and will now address ourselves to the issues before us on appeal.
ASSIGNMENTS OF ERROR NOS. 1 and 16
By these assignments, the defense argues that the trial court erred in denying a motion to suppress as untimely filed and in denying a motion for a new trial on grounds that evidence taken from defendant's house was unconstitutionally seized.
On January 4, 1980, the state filed a "Notice of Intent to Offer Evidence of Other Crimes." The state thereby notified defendant that it intended to prove defendant's lustful disposition for the victim by other acts of the defendant, consisting of placing the penis of the victim in a foam rubber tube or hose, which was connected to a hand held vibrator later removed by the police. On January 10, 1980, the first day of trial, defense counsel filed a "Motion to Suppress" this evidence, on the grounds that it would enrage a jury against defendant. Defense counsel therein claimed that the aforementioned "notice" provided his first knowledge of this evidence, and urged, "that the showing or use of this apparatus should be suppressed in that it is an indication of another crime other than that which your movant is being tried for." The trial court denied this motion on grounds it was untimely, and has noted in its per curiam that defendant answered ready for trial on January 9, 1980, after already receiving the state's notice on January 4, 1980. Accordingly, the trial court conducted no hearing into the grounds of the motion.
Counsel argues in brief that the factor of surprise cures any untimeliness under La.C. Cr.P. Art. 703, the basis of the trial court's *255 denial of the motion.[2] The state contends that since defendant was present when the item was seized from his home on July 18, 1979, and the arresting officer testified to the continuing nature of the crime at the preliminary examination, both defendant and defense counsel were placed on notice of the state's intent to introduce this evidence. The state also submits that since counsel did not file any motions for discovery or particulars, he should not be able to claim surprise under La.C.Cr.P. Art. 703.
The state, defense and the trial court all appear to be arguing under the wrong law. Despite its title, counsel's motion was clearly not challenging the introduction of the vibrator apparatus under the Fourth Amendment or La.Const.1974, Art. I, § 5. Rather, it questioned the admissibility of the evidence under Louisiana's system and intent statutes, R.S. 15:445 and 446. Viewed in that light, the trial court should have granted the defense a hearing. In State v. Prieur, 277 So.2d 126 (La.1973), this Court established procedural guidelines for the use of other crimes evidence at trial. Prieur requires that "[t]he state shall within a reasonable time before trial, furnish in writing to the defendant a statement of the acts or offenses it intends to offer...." Id., 277 So.2d at 130. It also requires that as a "[p]rerequisite to the admissibility of the evidence is a showing by the state that the evidence of other crimes is not merely repetitive and cumulative, is not a subterfuge for depicting the defendant's bad character or his propensity for bad behavior...." Id.
Whether or not he knew that the vibrator apparatus had been seized by the authorities, counsel had no reason to move to exclude evidence of other crimes until the state filed its notice of intent on January 4. Given the lateness of that notice, counsel's motion to suppress [exclude] the evidence on Prieur grounds, and put the state to its burden of proving the admissibility of other acts involving the same victim, was surely not untimely. Nevertheless, the evidence was admissible, and the defense can show no specific prejudice arising out of the trial court's failure to conduct a pre-trial hearing. In State v. Acliese, 403 So.2d 665 (La.1981), this Court upheld the trial court's admitting evidence of prior sexual assaults by defendant on the victim to show his lustful disposition toward her. This Court reviewed Louisiana jurisprudence on this issue and said:
"Evidence of other crimes related to the offense with which a defendant is charged is inadmissible except under special exceptions. Aside from related offenses admissible as part of the res gestae and convictions admissible for impeachment purposes, Louisiana's statutes provide for three exceptionsacts relevant to show intent, knowledge or system. La.R.S. 15:445, 446. Louisiana courts have recognized certain other exceptions, including the admissibility of prior sex crimes committed against the same prosecutrix. State v. Morgan, 269 So.2d 286 (La.1974), and citations therein.
Therefore, the merits of defense counsel's pretrial contention, that these other acts would unduly prejudice the jury, do not appear to merit consideration.
Counsel also urges here that the trial court erred in denying his motion for a new *256 trial. Counsel filed that motion on February 14, 1980 and alleged, inter alia, that he had just discovered that defendant did not (as the state claimed) contemporaneously give his consent to the search of his home. Pursuant to this warrantless search,[3] the vibrator and rubber hose were seized and admitted into evidence allegedly in violation of the defendant's constitutional rights.
Raised for the first time in a post-trial motion, counsel's constitutional objections under the Fourth Amendment and La.Const.1974, Art. I, § 5 were clearly untimely. La.C.Cr.P. Art. 703. In any event, defendant's own testimony on direct examination refutes counsel's present argument:
Q. Did you allow them to search the address at 1402 Mack Street?
A. Yes.
Consent is, of course, one of the well recognized exceptions to the warrant requirement. State v. Jolla, 384 So.2d 370 (La.1980). This assignment therefore lacks merit.
ASSIGNMENTS OF ERROR NOS. 2, 7, 12 and 13
By these assignments, defendant raises the issue that the trial court erred in consistently permitting the state to ask unduly leading questions of the complainant, a minor child, age ten, at trial. Defense counsel admits that this matter is within the trial court's discretion and in effect offers no argument.
A leading question is ordinarily prohibited when propounded to one's own witness, unless such witness is unwilling or hostile. La.R.S. 15:277. However, an exception is usually made when questioning a young child. In State v. Francis, 337 So.2d 487 (La.1976), this Court noted the following:
... Thus, the judge, when need appears, will ordinarily permit leading questions to children, or to witnesses so ignorant, timid, weak-minded, or deficient in the English language, that they cannot otherwise be brought to understand what information is sought. It is recognized, especially as to children, that in these cases the danger of false suggestion is at its highest, but it is better to face that danger than to abandon altogether the effort to bring out what the witness knows....
McCormick, Evidence, sec. 6 at page 10 (Cleary, 2d ed. 1972).
In State v. Williams, 143 La. 424, 78 So. 662 (1918), this court held that it would not be objectionable to ask leading questions of the twelve-year-old victim of a rape. We stated:
... [T]he rule forbidding leading questions is not so rigid that it should not yield somewhat to the discretion of the trial judge in the examination of a very young or timid witness.
Furthermore, notwithstanding the general rule against leading questions, the matter is largely within the discretion of the trial court and in absence of palpable abuse of that discretion resulting in prejudice to the accused, a finding of reversible error is not warranted. State v. Fallon, 290 So.2d 273 (La.1974); State v. Hollingsworth, 160 La. 26, 106 So. 662 (1925).
In the present case the victim was ten-years-old at trial and nine-years-old during the commission of the offense. A review of the questions propounded to him does not reveal that they were overly suggestive. We find no actual prejudice nor abuse of discretion by the trial court. These assignments lack merit.
ASSIGNMENTS OF ERROR NOS. 3, 4, and 10
Defense counsel argues that the trial court erred in not granting a mistrial under the following three assignments of error.
By Assignment of Error No. 3, defense counsel argues that the trial court erred in permitting the victim's grandfather to remain *257 by him while he testified, thereby coaching the young boy and otherwise creating prejudice. By Assignment of Error No. 4, it is submitted that the victim's grandfather made some improper comments to the judge and jury when he was directed to leave the courtroom, and thereby prejudiced the jury. By Assignment of Error No. 10, defense counsel submits that the state's unsuccessful attempt to introduce four magazines found at defendant's home, entitled: Sin, Quido, Cherry, and Hustler, so prejudiced the jury as to warrant a mistrial.
The state argued that the trial court did not abuse its discretion under La.C.Cr.P. Art. 764, by allowing the victim's grandfather to remain next to the victim while he testified because it was necessary for the victim to compose himself, and the grandfather never did testify. The state next submitted that neither the court nor the court reporter heard this unknown comment by the grandfather, which related to the victim, not the defendant and therefore an admonition could have been sufficient, but defense counsel declined to seek such a remedy. As to the magazines, the state submits that these items were never seen by the jury because they remained in a brown paper bag until the jury was removed for argument on the issue and, regardless defense counsel neither objected nor moved for a mistrial.
Assignments of Error Nos. 3 and 4 are properly before this Court as defense counsel did indeed move for a mistrial due to the alleged comment by the grandfather and the trial court noted defense counsel's objection to the grandfather's presence after the court denied the motion to exclude the grandfather from the courtroom under La.C.Cr.P. Art. 764. As to the magazines which were not admitted into evidence, defense counsel did not object to the witness mentioning the titles in front of the jury, the jury was then removed during argument over admissibility and never viewed these magazines and defense counsel did not request that the jury be admonished or move for a mistrial on the witness's comments. Defendant is therefore deemed to have waived any error on appeal which he may have claimed under La.C.Cr.P. Arts. 771 and 775. State v. Jones, 381 So.2d 416 (La.1980).
As to Assignment of Error No. 3, it does not appear that the trial court abused its discretion in denying defense counsel's motion to exclude the grandfather from the courtroom under La.C.Cr.P. Art. 764. The grandfather was not called as a witness. Moreover, La.C.Cr.P. Art. 764 allows the court to modify its' order in the interest of justice. As for the grandfather standing over the victim while he testified this could indeed be prejudicial. However, the record indicates that this ten-year-old boy was in tears, and did request the grandfather's presence when the trial judge inquired whether the victim thought he needed his grandfather there. This matter lies within the discretion of the court as to how the trial procedure should be conducted.
In Assignment of Error No. 4 defense counsel complains of some comment by the victim's grandfather, made in the presence of the jury. The comment appears to refer to the victim being railroaded. However, the trial judge did not hear this comment and the court reporter's recording mechanism did not pick it up. The trial court denied defense counsel's request to ask each juror whether they heard the statement and, if they did, to grant a mistrial. However, defense counsel specifically declined the trial court's offer to admonish the jury as to anything that the grandfather may have said, instead deciding to let it pass. Since this comment was not made by the judge, district attorney or court official and did not refer to the defendant, an admonishment instead of a mistrial would appear to have been an appropriate remedy. See, La.C.Cr.P. Arts. 770, 771, 772 and 775. These assignments lack merit.
ASSIGNMENT OF ERROR NO. 8
By this assignment defense counsel contends that the trial court erred in allowing the defendant to voluntarily leave the *258 courtroom, with his attorney's acquiescence, during the examination of a witness. Since the defendant voluntarily left the courtroom while his attorney was present he cannot object to his temporary absence under La.C.Cr.P. Art. 832.
This assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 17 and 18
By these assignments defense counsel argues that the trial court erred in denying defendant's motion for a new trial and motion in arrest of judgment based on a failure to admonish or sequester the jury. It is submitted that the guilty verdict is tainted because jurors may have heard a guilty plea tendered on the first day of the trial as to a lesser charge yet rejected by the trial court. It is submitted that the trial court did admonish the jury and did not inquire whether any of the jurors were aware of what was going on in the courtroom. It is further submitted that a local newspaper published the fact that defendant attempted to plead and the trial court did not inquire whether any jurors read the article nor did the trial court admonish or sequester the jury.
The clerk's minute entry reflects that the jury was chosen on January 10, 1980, the bill of information was then read, the trial court instructed the jury as to its behavior and allowed it to separate. The trial judge has no recollection as to instructing the jury on reading newspaper accounts of the proceeding but does recall that the newspaper reporter was not able to make his evening deadline to publish the account of the tendered guilty plea. It therefore does not appear that the defense has established that the jurors were even subject to publicity of a tendered guilty plea, much less that any of the jurors were aware of this fact.
Under La.C.Cr.P. Art. 791 the jury must be sequestered in non-capital cases only after the court's charge. The trial court may order the jury to be sequestered at any time. However, at any other time, including the commencement of the judge's charge, it is within the sound discretion of the trial court whether to allow the jurors to separate or be sequestered. State v. Phillips, 343 So.2d 1047 (La.1977). In State v. Phillips, supra, this court held that the trial court did not abuse its discretion in failing to sequester a jury during a week long kidnapping trial despite the fact that local newspaper and television stations gave wide publicity during the week of the trial to an unrelated kidnapping.
In the present case it appears that this issue was raised for the first time in defendant's motion for a new trial. The testimony during the hearing on this motion does not substantiate the tenuous theory which defense counsel proffers. It therefore appears that the trial court did not abuse its discretion in failing to sequester the jurors on its own motion.
Likewise, defense counsel has failed to show either any jurors knew of the attempted guilty plea tendered while it was taking place; or that defense counsel requested the trial judge to inquire whether the jurors knew of the guilty plea tender. However, the clerk's minutes do reflect that some admonishment was given to the jurors on January 10, 1980. Under these circumstances it seems that defense counsel has not met its burden of proof.
These assignments lack merit.
ASSIGNMENT OF ERROR NO. 19
Defense counsel argues that the trial court erred by invading the defendant's attorney-client privilege. Defense counsel submits that the trial court permitted cross-examination of the defendant during the post-conviction hearing on the "Motion for a New Trial" concerning whether the defendant had advised his trial attorney of the circumstances surrounding the search of his home or his alleged consent thereto.
It appears that the defendant never did affirmatively invoke the attorney-client privilege. In State v. Vassel, 285 So.2d 221 (La.1973), this Court noted that the La.R.S. 15:475 attorney client privilege did not bar any of the defendant's answers where he readily answered questions without objection.
*259 Since defendant never affirmatively invoked this privilege, the state withdrew its question and defense counsel does not even request what relief he seeks from this alleged infringment of the attorney-client privilege during a post-conviction proceeding, this assignment lacks merit.
ASSIGNMENTS OF ERROR NOS. 6 and 11
By these assignments defense counsel argued that the trial court erred in allowing irrelevant and immaterial evidence to be introduced. Error is alleged when the trial court allowed the state to question the victim as to whether he had bad dreams after the alleged incident. Error is also alleged by the trial court allowing an empty black box, allegedly seized from defendant's home, into evidence as being irrelevant and admitted without a proper foundation.
The first alleged error concerns the following testimony which was elicited by the prosecutor from the victim during direct examination:
Q. Donnie, have you haver had any bad dreams?
A. Yes, sir.
Q. What kind of bad dreams?
By Mr. Heard: I object as being irrelevant.
By Mr. Helm: It certainly is not irrelevant, Your Honor.
By the Court: At this point, without a time frame, I find it irrelevant.
Q. After you had to do this, this act in the yellow house, did you ever have bad dreams after that?
A. Yes, sir.
Q. Were the bad dreams concerning what happened in the house?
A. No, sir.
By Mr. Heard: I object as being leading.
By the Court: He had responded already before the objection. The question and answer will stand. Did you hear the response?
By Mr. Heard: Yes, Your Honor.
Q. Donnie, what were the dreams about?
A. See, I was locking myself in Kenneth's room and I was dreaming about that he had a gun toward the window and
Q. Who had a gun?
A. Mr. Bolton. I thought he was going to shoot me and I was yelling moma.
Q. Why do you think Mr. Bolton was going to shoot you?
A. Because of me telling on him.
It appears that defense counsel abandoned his relevancy objection after the trial court required the prosecutor to set out a time frame. Defense counsel's next and last objection was that the prosecutor's question was leading. Under this Court's rationale in State v. Robertson, 364 So.2d 915 (La.1978), and La.C.Cr.P. Art. 841, defense counsel may be barred from converting his leading question objection to a relevancy argument on appeal.
However, assuming that the objection was one of relevancy, then the question becomes whether the trial court abused its discretion in ruling that this testimony was relevant. A trial judge's ruling concerning the relevancy of evidence will not be disturbed on appeal in the absence of a showing of a clear abuse of discretion. State v. Martin, 400 So.2d 1063 (La.1981); State v. Alford, 384 So.2d 761 (La.1980); State v. Echols, 376 So.2d 1244 (La.1979); State v. Weems, 358 So.2d 285 (La.1978). The trial judge is vested with wide discretion in determining relevancy of evidence. State v. Hathorn, 395 So.2d 783 (La.1981).
In the present case, the prosecutor apparently offered evidence of the victim's bad dreams to establish that the defendant did indeed commit deviate sexual acts with the victim rather than the victim fabricating the story. Accordingly we find no abuse of the wide discretion afforded the trial court.
At trial, Sergeant Ray Cook testified that he seized an empty black box, a long black rubber hose, and short black rubber hose from the defendant's residence at 1006 North Third Street in West Monroe pursuant to a "consent to search" form. He stated that these items were in his possession *260 under lock and key since the seizure except when he submitted these items to Linda Armstrong. Linda Armstrong, a criminalist, with the North Delta Crime Lab, testified that she received these items from Sergeant Cook on August 22, 1979, and had them under her control until she returned them to Sergeant Cook on January 2, 1980. During this period she conducted tests which revealed presence of seminal fluid or spermatozoa on one of the black rubber hoses identified as "S-8". On cross-examination she admitted that the seminal fluid was not necessarily from a human being; it could have been from an animal. The victim testified that he recognized the short black rubber hose as one that the defendant would connect to a vibrator and insert his penis into and then turn the vibrator on. A picture on the empty black box was identified by the victim as the vibrator which the defendant used on himself, as described above, and on the victim.
The testimony recited above appears to lay a sufficient foundation for the introduction of these items into evidence. This evidence appears to be relevant towards proving the defendant's lustful disposition for the victim. It does not appear that the trial court abused its discretion in admitting these items into evidence.
These assignments of error lack merit.
ASSIGNMENTS OF ERROR NOS. 5 and 14
By these assignments defense counsel argues that the trial court erred in admitting certain statements, alleged to have been made by defendant, in one instance to the victim and in other instances to one Nora Nix, into evidence. Defense counsel first argues that these statements are "confessions" and that the proper procedure to determine their admissibility was not followed. Alternatively, defense counsel argues that if they are admissions then the proper predicate was not laid under La.R.S. 15:451.
We note that trial counsel objected to the victim's testimony as being repetitious and Nora Nix's testimony as being hearsay. Only on appeal does defense counsel argue that these statements constitute confessions or that the proper predicate was not laid for their introduction under La.R.S. 15:451. Under La.C.Cr.P. Art. 841 and this Court's rationale in State v. Robertson, 364 So.2d 915 (La.1978), defense counsel may be barred from converting his repetitious and hearsay objection to the present argument on appeal. Regardless, the merits of the argument will be addressed.
La.R.S. 15:449 provides the following statutory distinction between "admission" and "confession":
The term "admission" is applied to those matters of fact which do not involve criminal intent; the term "confession" is applied only to an admission of guilt, not to an acknowledgment of facts merely tending to establish guilt.
In State v. Dallao, 187 La. 392, 175 So. 4, appeal dismissed, 302 U.S. 635, 58 S.Ct. 51, 82 L.Ed. 494 (1937), this Court noted the following distinctions between a "confession" and an "admission":
A confession is limited in its precise scope and meaning to the criminal act itself. It does not apply to acknowledgments of facts merely tending to establish guilt, since a damaging fact may be admitted without any intention to confess guilt. There is a broad distinction between the mere admission of inculpatory facts and a confession of guilt. Where a person only admits certain facts from which the jury may or may not infer guilt, there is no confession. Marr's Crim. Jurisprudence, Vol. 2, pp. 841, 842.
See, State v. Coleman, 390 So.2d 865 (La. 1980); State v. Andrus, 250 La. 765, 199 So.2d 867 (1967); Comment, Confessions in Louisiana Law, 14 La.L.Rev. 642 (1954).
None of the statements allegedly made to Nora Nix seem to us to constitute a confession because none of them even refer to the victim. Rather these statements tend to circumstantially establish defendant's knowledge of the vibrator and his sexual predilections. Therefore rules governing the admission of a confession would not be applicable.
*261 Additionally, a careful review of Nora Nix's testimony concerning these "admissions" by the accused shows us that they were free and voluntary. This argument lacks merit.
Defendant's statement allegedly made to the victim does not seem to constitute a confession. The defendant did not thereby admit guilt to any particular offense. Rather, his statements amount to admissions by conduct, the offering of money to the victim in return for acts of oral sex and his silence at home. To this extent, the evidence was admissable as an exception to the hearsay rule. Moreover, with regard to the state's predicate for the use of this evidence, it did submit a "Notice of Intent to Use Inculpatory Statements." In any event, the victim was clearly not an officer of the state, and the statements were not made in the course of a custodial detention. Miranda warnings were therefore not required, State v. Ordonez, 395 So.2d 778 (La.1981). As to voluntariness, the record contains no indication that defendant was insane at the time, compare, State v. Glover, 343 So.2d 118 (La.1976), and it seems inconceivable that this little boy coerced this statement from the defendant. Given the fact that the state gave defendant timely notification of its intent to use this statement; defendant did not contend this statement constituted a confession at trial and the statement was allegedly made to a nine year old boy instead of a law enforcement official, this argument lacks merit.
ASSIGNMENT OF ERROR NO. 15
By this assignment defense counsel argues that a new trial should have been granted because of new and material evidence concerning the victim's testimony. He contends that because the victim told a Mrs. Drum that he fabricated the story and misrepresented the facts, his testimony could have been impeached by these prior inconsistent statements.
During the hearing on the "Motion for a New Trial" the state and the defendant entered a stipulation that if Mrs. Drum were called she would testify that her son and the victim both told her that the victim denied being sexually assaulted by the defendant. The parties further stipulated that Mrs. Drum's testimony would be truthful as to what was told her by the victim and her own son and could be admissible to impeach the victim's testimony on a prior inconsistent statement. Apparently this statement was made before or during the trial because the prosecutor did concede that it was a classic prior inconsistent statement, although no time frame is given.
La.C.Cr.P. Art. 851 governs this "Motion for a New Trial" as follows:
The motion for a new trial is based on the supposition that injustice has been done the defendant, and, unless such is shown to have been the case the motion shall be denied, no matter upon what allegations it is grounded.
* * * * * *
(3) New and material evidence that, notwithstanding the exercise of reasonable diligence by the defendant, was not discovered before or during the trial, is available, and if the evidence had been introduced at the trial it would probably have changed the verdict or judgment of guilty; [or]
* * * * * *
(5) The court is of the opinion that the ends of justice would be served by the granting of a new trial, although the defendant may not be entitled to a new trial as a matter of strict legal right.
This court has consistently held that the trial judge is accorded considerable discretion in evaluating the impact of newly-discovered evidence on the verdict and its reliability, and his ruling will be disturbed on appeal only where there is a clear showing of abuse of discretion. In considering a motion for a new trial based on newly-discovered evidence, the test to be employed is not simply whether another jury might bring in a different verdict, but whether the new evidence is so material that it ought to produce a different result than the verdict reached. State v. Miles, 402 So.2d *262 644, (La.1981); State v. Williams, 362 So.2d 530 (La.1978).
In the present case, this stipulation directly conflicts with the testimony of the victim at trial. Only ten of the twelve jurors voted for conviction. It is questionable whether this stipulation would constitute evidence so material that it ought to produce a different result than the verdict reached. It is only a prior inconsistent statement as opposed to substantive evidence probative of the defendant's innocence. It is certainly conceivable that the victim would be embarrassed or ashamed to admit to a friend that he had sexual relations with a seventy-four year old man. Given the presence of seminal fluid in the black rubber hose, the defendant's statements to Nora Nix regarding his sexual predilections, the eyewitness testimony of the victim's step-brother, and the victim's description of how these alleged deviate sexual acts took place, it does not appear that evidence of this prior inconsistent statement would have produced a different result than the verdict reached. This assignment of error lacks merit.
For the foregoing reasons, the conviction and sentence of defendant are affirmed.
AFFIRMED.
CALOGERO, J., dissents being of the view that there is merit to Assignments 5 and 14.
NOTES
[*] Judge Ned E. Doucet, Court of Appeal, Third Circuit, and Judges Thomas J. Kliebert, and Robert J. Klees, Court of Appeal, Fourth Circuit, participated in this decision as Associate Justices ad hoc joined by Chief Justice John A. Dixon, and Associate Justices Pascal F. Calogero, Jr., James L. Dennis and Jack C. Watson.
[1] La.R.S. 14:89.1 provides in in pertinent part:

§ 89.1 Aggravated crime against nature
Aggravated crime against nature is crime against nature committed under any one or more of the following circumstances:
(5) Where the victim is under the age of seventeen years and the offender is at least three years older than the victim.
Whoever commits the crime of aggravated crime against nature shall be imprisoned at hard labor for not less than three nor more than fifteen years, such prison sentence to be without benefit of suspension of sentence, probation or parole.
Amended by Acts 1979, No. 125, § 1.
La.R.S. 14:89 provides:
§ 89. Crime against nature
Crime against nature is the unnatural carnal copulation by a human being with another of the same sex or opposite sex or with an animal, except that anal sexual intercourse between two human beings shall not be deemed as a crime against nature when done under any of the circumstances described in R.S. 14:41, 14:41.1, 14:42, or 14:43. Emission is not necessary; and, when committed by a human being with another, the use of the genital organ of one of the offenders of whatever sex is sufficient to constitute the crime.
Whoever commits the crime against nature shall be fined not more than two thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both.
Amended by Acts 1975, No. 612, § 1.
[2] La.C.Cr.P. Art. 703 provides in pertinent part:

A. A defendant adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained.
B. A defendant may move on any constitutional ground to suppress a confession or statement of any nature made by the defendant.
C. A motion filed under the provisions of this Article must be filed in accordance with Article 521, unless opportunity therefor did not exist or neither the defendant nor his counsel was aware of the existence of the evidence or the ground of the motion, or unless the failure to file the motion was otherwise excusable. The court in its discretion may permit the filing of a motion to suppress at any time before or during the trial.
La.C.Cr.P. Art. 521 provides:
Pretrial motions shall be made or filed within thirty days after arraignment unless a different time is provided by law or fixed by the court at arraignment.
Upon written motion at any time and a showing of good cause, the court shall allow additional time to file pretrial motions.
[3] A search warrant was issued but apparently no evidence was seized pursuant to it. However, the state and defense agreed that the items seized from defendant's home were not seized with the benefit of a search warrant because none existed for the home.