[Criminal No. 419.   Filed May 19, 1917.]

[165 Pac. 315.]

JAMES MURRAY and ANDY JOHNSON, Appellants, v. STATE, Respondent.

1. CRIMINAL LAW—CRIMINAL PROSECUTION—CONDUCT OF TRIAL.—The exhibition, during a trial for introducing intoxicating liquors into the state, of a blackboard showing two other similar indictments against defendant, and collecting in the courtroom large quantities of whiskey involved in such other cases, was improper, where the sole defense was that accused received the whiskey inside the state.

2. INTOXICATING LIQUORS—CRIMINAL PROSECUTION—INSTRUCTIONS.—In a prosecution for bringing intoxicating liquors into the state, evidence that accused, when arrested while driving from the state line with intoxicating liquors, stated that it cost him an additional amount to have such liquors brought and delivered to him within the state, warrants an instruction that persons aiding, etc., in the introduction of liquor into the state are guilty as principals.

3. INTOXICATING LIQUORS—SUFFICIENCY OF EVIDENCE—INTRODUCTION INTO STATE.—Such evidence sustains a conviction for unlawfully introducing liquors in the state.

4. INTOXICATING LIQUORS—CRIMINAL PROSECUTION—ADMISSIBILITY OF EVIDENCE.—In a prosecution for introducing liquors into the state, where the sole defense was that accused received it within the state, labels and internal revenue stamps showing the liquor was whiskey and time and place of bottling are inadmissible.

5. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR.—The error in admitting such evidence is harmless.

6. INTOXICATING LIQUORS—CRIMINAL PROSECUTION—SUFFICIENCY OF EVIDENCE.—In a prosecution for introducing intoxicating liquor into the state, evidence sufficient to sustain conviction of one defendant

XIX Ariz.—4

does not sustain a conviction of his companion, who was not shown to have been interested either in the liquor, its purchase, or in the automobile used to convey it.

7. CRIMINAL LAW—APPEAL AND ERROR—HARMLESS ERROR.—A conviction for introducing intoxicating liquors into the state based upon the admissions of accused and attendant circumstances, the sole defense being that the liquor was received inside the state, will not be reversed because the jury was erroneously informed that other similar charges were pending against accused and the liquor involved in such cases was shown them.

[As to regulation or prohibition of sales of intoxicating liquors by the state, see note in 35. Am. Dec. 331.]

APPEAL from a judgment of the Superior Court of the county of Cochise. O. J. Baughn, Judge. Dismissed as to Murray and affirmed as to Johnson.

Mr. Alexander Murry and Mr. S. K. Williams, for Appellants.

Mr. Wiley E. Jones, Attorney General, and Mr. Geo.. W. Harben and Mr. R. W. Kramer, Assistant Attorneys General, for the State.

ROSS, J.—The appellants were tried and convicted on the charge of introducing whiskey into Cochise county, Arizona, from the state of New Mexico, in violation of the prohibition amendment. From the judgment of conviction, they appealed.

Appellants complain of certain stagings or settings of the courtroom, which they claim were calculated to prejudice their rights in the eyes of the jury. It was the custom of the trial court to cause to be placed upon a blackboard in the trial courtroom in the morning before opening court the title of each case to be tried during the day. On the day this case was called for trial, there appeared on the blackboard in plain view of the jury the following calendar for the day:

"No. 712: State *v*. Andy B. Johnson.

"No. 835: State *v*. Andy B. Johnson and James Murray.

"No. 844: State *v*. Andy B. Johnson and James Kilcoyne."

The prosecution had also brought into the courtroom and placed in view of the jury panel as they assembled in the courtroom the following: Twenty cases of whiskey admittedly the whiskey the defendants were charged with introducing

into the state in the present case; eight cases of whiskey identified with cause No. 844; and twelve cases of whiskey identified with cause No. 712.

Upon the opening of court, and before the jury was drawn and impaneled, appellants moved the court to strike from the blackboard the number and title of all cases against appellant Johnson, excepting the one then to be tried, and also to order removed from the courtroom the 20 cases of whiskey identified with causes Nos. 712 and 844. The court's denial of this motion is assigned as error.

It must be admitted that the case was well and attractively staged and the settings admirably placed for the performance about to take place. Indeed, it was staged with as little regard to the forms of law as the average scenario trial in a moving picture show. The appellant Johnson was placarded upon the blackboard not once, but thrice; he had fractured the majesty of the law as many times as the cock had crowed before Peter forsook his Master. The jury was warned that he was at least adept, if not an expert, in the art of bootlegging; they were thus notified that he was a habitual lawbreaker and a bad man generally.

The more to impress them of his criminal tendencies and the certainty of his guilt, booties galore of his prowess in his particular field of operation were displayed in the courtroom. In addition to the 20 cases of wet goods involved in the case on trial, 20 more cases, presumably the fruits of his exploits at other times and occasions, were present in the courtroom for the purpose of letting the jury have an insight into all other charges then pending against appellant Johnson. While professedly trying one case against appellant Johnson, adroitly and cunningly, with the sanction of the court, the stage of action was so arranged and set as to throw upon the canvas in plain view of the jury a multiplicity of crimes in which he was accused of participating.

Everyone charged with crime is entitled to a fair and impartial trial, and this is true whatever the character or grade of the offense. The scales of justice should always be adjusted for all alike. Neither many nor flagrant violations of the law, nor public clamor for convictions, should have any place or influence in a court of justice. The same rules of evidence and the same orderly and dignified conduct should be observed in the trial of all cases.

While the custom of the court in placing upon the blackboard the trial calendar of the day is commendable, in that it advises litigants and lawyers alike to be ready on the call of their cases, yet in this case it was likely to prejudice the rights of appellant Johnson, and therefore should not have been exposed to the jury at all. The court should have cleared the blackboard of the other two cases on his own motion and without being requested to do so by appellant Johnson.

The fruits of crime and the means and instruments with which crimes are committed are frequently introduced in evidence, and may generally be said to be competent when there is any controversy as to the manner in which the crime was committed or the means used in its commission. In the present case, the crime charged was the introduction of whiskey into the state from without the state. The *corpus delicti*, therefore, was the introduction of the liquor. There was no question as to the character of the liquor or as to its quality or as to the ownership or its possession—all of these were conceded. That being true, we are unable to see why any of the whiskey should have been paraded before the jury, unless it was to arouse prejudice and bias in the minds of the jury against the appellants. But, had the issue been so framed as to admit in evidence the 20 cases charged to have been introduced in this case, surely that was all and enough. Indeed, the other 20 cases were not offered in evidence, but they stood as mute witnesses of other devious and oblique conduct of at least one of the appellants.

As above indicated, the only issue between the state and appellants was as to whether the appellants had introduced the 20 cases of liquor from New Mexico into Arizona; as to whether the appellants had themselves brought the liquor into the state, or had caused it to be brought into the state. The fact in dispute, then, was the manual transference of the liquor across the state line. On this issue it was not necessary to have the liquor on exhibition. An inspection of it would have no tendency to prove it of New Mexico origin, or that it had crossed the line from New Mexico into Arizona. If they brought it or caused it to be brought from New Mexico into Arizona, it was a fact to be proved, as any other fact, by direct and by circumstantial testimony and by admissions and confessions of appellants.

The evidence upon this issue is succinctly: The sheriff and the deputy sheriff of Cochise county on the twenty-ninth day of January, 1916, on the Borderland route, which leads through Douglas, Arizona, to Rodeo, New Mexico, about 20 miles west of the New Mexico line, met the appellants, who were headed from the direction of Rodeo toward Douglas with an automobile containing 20 cases of whiskey. The deputy sheriff said Johnson told him that they got the whiskey three-quarters of a mile inside Arizona; that he paid $284 for it, and that it cost him $10 more to get it on this side of the line; that he had the whiskey delivered to him on this side of the line; that he got it on this side of the line. The sheriff relates what Johnson said to him as follows:

"I asked where he got the whiskey, and he told me he had gotten it this side of the line; and then I tried to find out where and how he had gotten it, but he did not tell me that."

Murray said to the sheriff:

"Well, we did not go across the line to get it. It cost us $10 (more) to have it brought on this side of the line than it would have cost us if we had gone over and got it ourselves."

Johnson, testifying in his own behalf, said that he met a man by the name of Simpson about three and one-half miles west of the New Mexico line, with whom he bargained for 20 cases of whiskey; that Simpson left him for about an hour and returned with the whiskey when the trade was made, he paying Simpson $284 and receiving 20 cases of whiskey; that Simpson told him that $284 was $10 more than it would have cost on the other side. Murray's testimony corroborated Johnson's, except that he disclaimed any interest in the liquor and explained his presence with Johnson as the latter's guest and traveling companion. They both said that Simpson, when they first met him, was driving a light spring wagon drawn by a pair of mules; that at that time he had no liquor with him; that after Johnson had bargained for the liquor he went away, remaining about one hour, when he returned with the liquor drawn by the same team and in the same vehicle. The appellants were residents of Lowell, Cochise county, Arizona. They claimed that their intended destination was Globe, Arizona, via Lordsburg over the Borderland route; that they got within three and one-half miles of the New Mexico line, and, owing to the heavy rain that was falling at

the time, the roads had become impassable, and they had been compelled to retrace their steps back to Douglas.

There is no material conflict of evidence, no complexity of controverted facts to be reconciled. The only issue in dispute, the *corpus delicti,* if established at all, is made out from the mouths of the appellants and the circumstances hereinafter adverted to. The circumstance of finding the appellants on the public highway with 20 cases of whiskey, 20, or three and one-half miles, or three-quarters of a mile from the New Mexico line headed in the direction of Douglas, Arizona, unaided by any explanation, would not establish the fact that they had brought the liquor or caused it to be brought from New Mexico. It would afford grounds of suspicion or conjecture, but nothing more.

Does the explanation of appellants as to where and how they obtained the liquor supply the lack of proof on the question of introduction? It is undisputed that they bargained for the whiskey in Arizona and that it was delivered to them in Arizona. The question is, then: Where did Simpson, the seller, obtain the whiskey? Did he, when he left the appellants, with their knowledge go into New Mexico and there obtain the whiskey and return with it into Arizona where appellants were and deliver it to them?

In view of the law in Arizona at the time, it is not likely that Simpson had a stock of liquors in this state; the saloon as an institution had been abolished, and the traffic in liquors prohibited. Just across the line in New Mexico there were licensed saloons and, in view of the admissions of appellants, wherein they say, ''The whiskey was delivered on this side of the line,'' ''We did not go across the line to get it,'' and, ''it cost us $10 more to have it brought on this side of the line than it would have cost us if we had gone over and got it ourselves,'' we think it reasonably inferable that at the time the bargain for the liquor was made in Arizona it was understood that Simpson would go across the line and return with it.

It is contended by the appellants that the state of facts above detailed did not authorize an instruction given to the jury as follows:

''That all persons who aid and abet or, not being present, advise and encourage the introduction of said liquor, . . . are guilty as principals in the act.''

It is said that Simpson is not shown to have brought the liquor from New Mexico into Arizona; that the instruction assumes as proven this necessary fact, and that, even if Simpson did in fact introduce the liquor into Arizona, it has not been proved that the appellants had knowledge thereof before they received and paid for it. We think, in view of the admissions of the appellants and the attendant circumstances, the instruction was justified and properly given. We also are convinced that there was sufficient evidence of the *corpus delicti* to sustain the verdict of the jury. *Reynolds* v. *State,* 18 Ariz. 388, 161 Pac. 885.

The appellants complain of error in the admission of the label and internal revenue stamp taken from one of the bottles of liquor found in their possession. These were introduced over the objection of appellants for the purposes, as stated by the county attorney:

"First, that it shows upon the face of it that it is marked whiskey plainly. Second, it shows where it was made and the brand of the label and when it was bottled. It shows the place and when it was bottled."

As above stated, the character of the liquor was not questioned; it was admitted to be whiskey. Therefore whatever it might have been labeled was immaterial. The legends on the stamp and label were that the whiskey was made in Athertonville, Kentucky, and also when the whiskey was bottled there. Of course, these things were immaterial under the issue; they did not show, or tend to show, an unlawful introduction of the liquor into Arizona. It was error to admit in evidence the stamp and label for the reasons above given, but we do not think that the error could have prejudiced the rights of the appellants. The purpose for which they were offered, as stated by the county attorney, showed that they did not prove, or tend to prove, any introduction of liquor into the state, or have any bearing upon that issue.

As heretofore indicated in this opinion, the appellant Murray was only a guest or traveling companion of Johnson. It is not shown that he was interested in any way in the automobile used to move the liquor, or in the liquor itself; it was all bought and paid for by appellant Johnson; he did all the negotiating with Simpson, the seller; and everywhere the evidence discloses that he only was interested in securing the liquor. For these reasons, we are of the opinion that the

judgment should be reversed as to Murray and remanded, with directions to dismiss as to him.

Notwithstanding the many palpable errors that were committed in the course of the trial, we do not believe that the case should be reversed as to appellant Johnson. If the case had been tried upon the admissions and the statements of the appellants and the circumstances connected therewith, and the errors to which we have alluded had not crept into the trial, still we are satisfied that the verdict of the jury should have been one of guilty as to Johnson. We do not see how a common-sense jury, if the case were remanded for a new trial and the evidence in this record free from legal objection was submitted to it, could return a different verdict. If the facts bearing upon the issue of introduction were in dispute, or if it was made to appear that upon another trial free from error a different verdict might be had, because of the many flagrant and egregious errors in this record, we would be compelled to remand the case for a new trial.

Under the circumstances, we believe that the judgment of conviction should stand as to appellant Johnson, and it is so ordered.

FRANKLIN, C. J., and CUNNINGHAM, J., concur.