**Frederick LANDERS, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 782S269.**

Supreme Court of Indiana.

June 25, 1984.

Hugh G. Baker, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Stephan E. Wolter, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

Defendant-appellant, Frederick Landers, was charged by information on August 10, 1981 with robbery, Ind.Code § 35–42–5–1, a class C felony, and resisting law enforcement, Ind.Code § 35–44–3–3(3), a class A misdemeanor. On September 29, 1981, the State was permitted to file an amended information, adding the allegation that the defendant was an habitual offender, Ind. Code § 35–50–2–8. Trial commenced on January 25, 1982. After presentation of the evidence on the substantive charges, defendant pleaded guilty to the charge of resisting law enforcement and the trial judge accepted that plea. The jury found the defendant guilty of robbery, and after hearing evidence of his prior convictions in the second phase of the trial adjudged him to be an habitual offender. He was sentenced to a term of eight years imprisonment for the robbery and this sentence was enhanced by thirty years because of the habitual offender finding. He received a sentence of two hundred days for resisting law enforcement.

In this direct appeal, defendant raises several issues for our review:

(1) Whether there is sufficient evidence to support his conviction of robbery.

(2) Whether the trial court erroneously refused his tendered instruction on the lesser included offense of criminal conversion.

(3) Whether the trial court erred by refusing to appoint two psychiatrists to determine defendant's competency to stand trial.

(4) Whether the trial court committed error by admitting a tape recording into evidence for which the State had not established a proper foundation.

(5) Whether the trial court should have granted defendant's motion for a continuance.

(6) Whether an arrest report was erroneously admitted into evidence under the business records exception to the hearsay rule.

Wanda Wallace testified that she was a cashier at a Bonded Oil gas station in Marion County and was working alone on Sunday, August 9, 1981. At 12:30 p.m., defendant entered the station and asked for a package of cigarettes. Wallace got the cigarettes and requested the fifty-nine cent purchase price after pressing a button which opened the cash register drawer. Defendant leaned over the counter and said, "Don't say anything just give me all your money." Wallace testified she was stunned and did not move. Defendant then pushed her hands away from the cash register drawer and shoved her against the cigarette case. He grabbed the bills and some change from the drawer, then lifted the drawer and checked underneath it. Wallace further testified that when a customer drove up to the station, defendant ordered her to get on the floor and then walked out of the station.

Warren Shelley, an off-duty security officer, testified that as he entered the gas station building he encountered the defendant who had a "hand full of bills." Defendant said hello to Shelley and continued out of the building. Upon being informed by Wallace that defendant had just robbed the station, Shelley ran outside and saw defendant running down the street. Shelley flagged down a marked patrol car driven by Officer Patrick Tompkins who then pursued the defendant. Defendant was also observed running from the scene by Carl Bartenbach, who was looking out a window facing the gas station.

Officer Tompkins testified that defendant entered a car and a high speed chase ensued. He pursued the defendant until defendant's car left the road, slid down an embankment and came to rest after hitting a utility pole. Defendant jumped out of the car and ran away from Officer Tompkins until he was stopped by Officer Schuyler Atkins. Wallace, Shelley and Bartenbach identified the defendant at the scene.

Defendant testified in his defense that he entered the Bonded Station and asked for a package of cigarettes. As Wallace turned to get them, defendant noticed that the cash register drawer was open slightly. He leaned over the counter, opened it fully, and took the money inside. He claimed he said nothing to Wallace at this time and did not push her hands away or shove her. When he saw a customer drive into the station, he told Wallace to get on the floor so that she would not be hurt if someone shot at him. His account of the chase and his capture did not differ significantly from that of the police officers except that he testified that he ran from the car after it stopped only because of his that the automobile might explode.

## I.

Defendant first contends that there was insufficient evidence to support the verdict of the jury finding him guilty of robbery. Indiana Code § 35–42–5–1 provides in pertinent part:

"A person who knowingly or intentionally takes property from another person or from the presence of another person:

"(1) By using or threatening the use of force on any person; or

(2) By putting any person in fear; commits robbery, a class C felony."

Defendant claims that there was no evidence adduced that the unlawful taking here was accomplished by the use of force, the threat of force or by putting the victim in fear. Our standard of review on a claim of insufficient evidence requires that we neither weigh the evidence nor resolve questions of credibility, but look only to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State*, (1970) 254 Ind. 401, 260 N.E.2d 558. If from that viewpoint there was evidence of probative value from which a reasonable trier of fact could conclude that a defendant was guilty beyond a reasonable doubt, we will affirm the conviction. *Taylor v. State*, (1973) 260 Ind. 64, 291 N.E.2d 890; *Glover v. State*, (1970) 253 Ind. 536, 255 N.E.2d 657.

The victim of this offense, Wanda Wallace, testified that she was alone in the gas station on a Sunday afternoon when defendant ordered her: "Don't say anything just give me all your money." Wallace was five feet two inches tall while defendant was over six feet tall. She stated that defendant "pushed" her hands away from the cash register drawer and "shoved" her several steps back against a cigarette case. She further testified that she was scared, was not sure whether the defendant was going to hurt her and shook during, as well as after, the robbery. She obeyed the defendant's command to "get down on the floor." We find that a reasonable jury could have believed Wallace's assertions of fear and concluded that the evidence was sufficient to support a guilty verdict on the charge of robbery.

## II.

After the presentation of evidence on the substantive charges, defendant tendered two final instructions on lesser included offenses of robbery. The trial judge gave defendant's instruction on theft but refused his tendered instruction on criminal con-

version. Defendant claims that this was error. Theft is defined by Ind.Code § 35–43–4–2, which states in part:

"A person who knowingly or intentionally exerts unauthorized control over property of another person, with intent to deprive the other person of any part of its value or use, commits theft, a class D felony."

Criminal conversion is defined by Ind.Code § 35–43–4–3, which states:

"A person who knowingly or intentionally exerts unauthorized control over property of another person commits criminal conversion, a class A misdemeanor."

Both theft and conversion are lesser included offenses of the crime of robbery. *Rogers v. State*, (1979) 272 Ind. 65, 396 N.E.2d 348. The test for determining whether it was error not to give a tendered instruction on a lesser offense, however, is not only whether that offense is necessarily included within the greater offense as charged, but also whether there was evidence presented at trial to which the included offense instruction was applicable. *Rogers, supra; Rowley v. State*, (1979) 271 Ind. 584, 394 N.E.2d 928; *Hash v. State*, (1972) 258 Ind. 692, 284 N.E.2d 770.

While defendant argues that the jury could have found the absence of an intent to deprive which distinguishes theft from conversion, he acknowledges that such a finding could have resulted only if the jurors were confused. He points to no evidence to show the absence of an intent to deprive the other person of the use or value of the property. Since there was no evidence to support the giving of an instruction on criminal conversion, the trial court committed no error by refusing defendant's tendered instruction.

## III.

On the morning of trial, defendant filed a "Notice of Insanity" in which he cited Ind. Code § 35–5–3.1–1 in claiming that he did not have "comprehension sufficient to un-

derstand the nature of the criminal action against him and the proceedings thereon to make his defense." He requested an examination by two physicians. He now claims that the trial court's refusal to appoint two disinterested psychiatrists to further assess the basis of his suggestion of incompetency was an abuse of discretion.

Indiana Code § 35–5–3.1–1(a) [Acts 1974, P.L. 148, § 1, p. 630; 1978, P.L. 145, § 5, p. 1322 (repealed 1982); for provision effective September 1, 1982 see Ind.Code § 35–36–3–1] provided:

"If at any time before the final submission of any criminal case to the court or jury trying the same, the court, either from its own knowledge or upon the suggestion of any person, has *reasonable grounds for believing* that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense, the court shall immediately fix a time for a hearing to determine whether the defendant has that ability. The court shall appoint two competent disinterested psychiatrists, who shall examine the defendant for the purpose of forming an opinion as to whether the defendant has that ability and shall testify concerning the same at the hearing." (Emphasis added.)

In *Green v. State,* (1981) Ind., 421 N.E.2d 635, the defendant argued that the trial court was required to appoint two psychiatrists to examine a defendant once a suggestion of incompetency was made. We held there that this view of Ind.Code § 35–5–3.1–1 was clearly mistaken and that the statute required the appointment of psychiatrists only if the court had reasonable grounds for believing the defendant was incompetent. We found no abuse of the trial judge's discretion in his determination that such reasonable grounds did not exist where Green's suggestion of incompetency contained only the naked assertion that he was incompetent to stand trial.

While defendant claims in his brief that the record indicates he exhibited confusion at every pre-trial stage of the proceedings and had difficulty working with his public defender, the State correctly points out that he supplies no citations to the record in support of this contention. The defendant points to his "incoherent ramblings" to the court as a further indication of his incompetency. When asked by the judge prior to the commencement of the trial if he had anything to say in support of his "Notice of Insanity," defendant replied:

"I feel that right now I am not competent to sustain trial. The answers subjected to be before or after the trial at this moment I wouldn't have any relevant meaning to that. I would like to be examined first by a psychiatrist, since this is a trial pertaining with amended substance of Habitual Criminal Habits and my habits were such a way that I would like to be examined by a psychiatrist first."

■ Defendant's suggestion that he was incompetent to stand trial rested only on his "naked assertions" in his colloquy with the trial judge that because of his habits and confusion he desired to be examined by a psychiatrist. Defendant's testimony at trial revealed that he had a factual comprehension of the proceedings against him and there was no indication that he did not have the ability to consult rationally with his counsel and assist in the preparation of his defense. We have found that this is the measure of competency to stand trial. *Mato v. State,* (1982) Ind., 429 N.E.2d 945. The trial judge did not commit error in determining that no reasonable grounds existed for believing that defendant was incompetent to stand trial.

IV.

Detective Jerald Schemenaur testified at defendant's trial that he arrived at the scene of defendant's capture after his apprehension. He informed defendant of his rights in accordance with *Miranda v. Arizona,* (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Defendant signed a form provided indicating that he understood his rights and was waiving them. Immediately thereafter, defendant gave a statement which was tape recorded. The State intro-

duced this tape recording as State's Exhibit R at trial over defendant's objection. Defendant claims that the trial court erred in admitting State's Exhibit R because a proper foundation for the tape was not provided.

■ Prior to admission of a sound recording, a foundation must be established disclosing that:

(1) The tape is authentic and correct;

(2) The testimony elicited was freely and voluntarily made, without any kind of duress;

(3) All required warnings were given and all necessary acknowledgements and waivers were knowingly and intelligently given;

(4) The tape does not contain matter otherwise not admissible into evidence; and

(5) The tape is of such clarity as to be intelligible and enlightening to the jury. *Jones v. State*, (1981) Ind., 425 N.E.2d 82; *Lamar v. State*, (1972) 258 Ind. 504, 282 N.E.2d 795.

■ Defendant initially contends that the State failed to show that the tape was authentic and correct. Schemenaur testified, however, that State's Exhibit R was a "true and accurate recording" of the statement given him by defendant and stated that the tape was a verbatim statement as he recalled it. Schemenaur furthermore testified that prior to trial the tape had remained locked in his office desk since its recording except when his secretary typed the statement. Contrary to defendant's vague assertions, the facts that the chief of Schemenaur's division had a key to the detective's desk and that Schemenaur did not know if the tape recorder used by his secretary to transcribe the statement was capable of erasing a tape do not render the tape unauthentic or incorrect.

■ Defendant further claims on appeal that the State failed to show that the tape recorded statement was made freely and voluntarily without any duress. The record reveals that at the beginning of the recorded statement Schemenaur inquired whether defendant wished to talk about the incident and defendant responded affirmatively. Defendant acknowledged during the statement that Schemenaur read him his rights, that he understood those rights and that he had signed the rights waiver. Where the adequacy of the advisement of rights is not in dispute, and an express waiver is made, and there is no showing that the waiver was not voluntary and intelligent, a statement given to the police immediately following the advisement and waiver cannot but be voluntary. *Magley v. State*, (1975) 263 Ind. 618, 335 N.E.2d 811. At the conclusion of the statement, defendant indicated that he was not forced to give the statement and was not threatened. We find that there was a sufficient showing that the testimony elicited was freely and voluntarily made without any kind of duress and that the tape recording was properly admitted.

## V.

Defendant next contends that the denial of his motion for a continuance made on the morning of trial was error. Defendant claims, in his motion and on appeal, that he required additional time to set aside one of the prior felony convictions alleged as part of the basis for the habitual offender count. He attached to his motion several letters he received in response to correspondence sent by him in an attempt to secure transcripts of his 1980 guilty plea to and conviction of theft. The first response was dated October 23, 1981. Defendant had not received the information he sought by the time of trial.

■ This correspondence, however, indicates that defendant incorrectly described and denominated the information he sought or addressed his inquiries to the wrong parties. The record shows that a public defender entered his appearance for defendant on August 12, 1981 and continued to represent him through his sentencing hearing. The original information was amended on September 29, 1981 to include the habitual offender charge in which defendant's prior theft conviction was alleged. Defendant had sufficient time to

investigate his prior theft conviction with the assistance of counsel and the trial court did not err in denying his motion for continuance made on the morning of trial.

## VI.

Defendant finally contends that State's Exhibit F was erroneously admitted during the habitual offender proceeding. He also argues that if this evidence had been properly excluded, there would have been insufficient evidence to establish that he was an habitual offender.

The information alleging that defendant was an habitual offender listed three prior felonies—a conviction for assault and battery with intent to rob on July 12, 1968, a conviction for aggravated assault and battery on August 13, 1970, and a conviction for theft on December 5, 1980. At the habitual offender proceeding, the State introduced copies of the informations and docket entries evidencing the convictions and sentencing of a Fred Landers for the 1968, 1970 and 1980 felonies alleged. The State also introduced copies of commitment papers and prison records concerning the 1968 and 1970 convictions bearing photographs of a Fred Landers and his fingerprints. Over objection, the State introduced State's Exhibit F, a copy of a police arrest report containing information about a Frederic Landers and a thumbprint obtained as a result of a 1980 arrest for robbery which resulted in the 1980 theft conviction. Officer Steven Schachte testified that he was a trained fingerprint examiner and that the fingerprints on the documents admitted with regard to the 1968 and 1970 convictions and the thumbprint on State's Exhibit F matched the fingerprints taken of defendant Frederick Landers on the morning of trial. Defendant contends that State's Exhibit F, admitted under the business records exception to the hearsay rule, should have been excluded.

■ Hearsay evidence is admissible under the business records exception if it is identified by its entrant or one under whose supervision it is kept and shown to be an original or first permanent entry, made in the routine course of business, at or near the time of the recorded transaction, by one having both a duty to so record and personal knowledge of the transaction represented by the entry. *Jones v. State,* (1977) 267 Ind. 205, 369 N.E.2d 418; *American United Life Ins. Co. v. Peffley,* (1973) 158 Ind.App. 29, 301 N.E.2d 651. Defendant's specific claim is that the State failed to show that the original entrants of particular information on Exhibit F had personal knowledge of the underlying transactions represented by those entries.

■ Officer Schachte testified as the sponsor of Exhibit F that he is a "Keeper of the Records" for the Indianapolis Police Department and that the exhibit was kept in a file under his supervision. He explained that shortly after a person's arrest an arrest report is routinely made by the arresting officer. The report contains information such as the name, date, time and charge, as well as a fingerprint. He testified that the officers who enter the information on the arrest report would receive that information from the person arrested and thus would have first-hand knowledge of that information. This constituted a sufficient foundation for the admission of this arrest report. *See, McBrady v. State,* (1984) Ind., 459 N.E.2d 719.

■ Defendant's claim that the exhibit should have been excluded because of the possibility that a partially completed arrest report might be separated from the person arrested before the thumbprint was placed on the report, thus resulting in the report bearing someone else's thumbprint, cannot stand. Defendant would require a guarantee of accuracy available only by requiring the original entrant of the information to testify. The possible inaccuracy of certain information recorded in the routine course of business is a weakness inherent in all business records. We have resolved concern about this weakness in the formulation of the business records exception to the hearsay rule. The guarantee of accuracy defendant seeks is not required as

part of the foundation for the admission of evidence as a business record.

The trial court did not err in admitting State's Exhibit F. Because of our reoslution of this issue, we need not consider defendant's argument that if Exhibit F had been excluded there was insufficient evidence to establish that defendant was an habitual offender.

Defendant's conviction and the determination that he is an habitual offender are affirmed.

GIVAN, C.J., and HUNTER, PRENTICE and PIVARNIK, JJ., concur.