**John K. DUFFITT, Appellant (Defendant),**

**v.**

**STATE of Indiana, Appellee (Plaintiff).**

**No. 48A02–8701–CR–36.**

Court of Appeals of Indiana,
Second District.

Feb. 17, 1988.

---

John Richard Walsh, II, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

BUCHANAN, Judge.

## CASE SUMMARY

Appellant-defendant John K. Duffitt (Duffitt) appeals his jury convictions on six counts of child molesting, class C felonies,[1] one count of child molesting, a class B felony,[2] and one count of attempted child molesting, a class B felony,[3] claiming the trial court's actions and comments denied him a fair trial, that the trial court erred in denying his motion to be examined by a psychiatrist and for psychiatric examinations of the victims, that there was insufficient evidence to sustain the convictions, that he was denied a fair trial due to impropriety on the part of a deputy prosecutor, and that the trial court erred in imposing consecutive sentences.

We affirm.

## FACTS

The pertinent facts demonstrate that in May of 1982, L.R., nine years old, and her sister S.R., eleven years old, were acquaintances of Duffitt's children, and were spending the night at Duffitt's house in Elwood, Indiana. That night, Duffitt called L.R. into his bedroom, where he was lying on his bed wearing no clothes. Duffitt called L.R. to him, unbuttoned her pants, got on top of her, and attempted to engage in sexual intercourse. Later the same night, Duffitt also called S.R. to his bedroom, pulled her to his bed, got on top of her, and had sexual intercourse.

In June of 1982, S.R. was again at Duffitt's home, when Duffitt called her into the bathroom and forced her to touch his penis.

In April, 1984, Duffitt drove eleven-year-old P.M., her sister, and his daughters to a skating rink in Alexandria, Indiana. On the way home from the skating rink, he allowed P.M. to "drive" the car, by having her sit on his lap. As she was sitting on his lap, Duffitt undid her pants, and put his hands on her "privacy", down the front of her pants.

The next month, Duffitt was driving P.M. and some others to a Dairy Queen in Elwood, Indiana, and again P.M. sat on his lap. Duffitt put his hands down the front of her pants, and told her if she would not kiss him that he would not drive her home. At that time, Duffitt's passengers departed from the car and later reported him to the police.

In June, 1984, Duffitt drove J.B., ten years old, and her twin sister, D.B., their babysitter, and three of J.B.'s and D.B.'s sisters to a fair in Anderson, Indiana. On the way home from the fair, J.B. was sitting on Duffitt's lap when Duffitt placed his hands down her pants and moved them around. Later on that trip, D.B. was sitting by Duffitt, and he put his arms around her and then put his hand down the back of her pants.

The jury found Duffitt guilty of seven counts of child molesting, and one count of attempted child molesting. On June 10, 1985, the trial court sentenced Duffitt to five years on each of the class C child molesting convictions, to ten years on the class B child molesting conviction, and to

---

1. Ind.Code 35–42–4–3(b) (1982).

2. IC 35–42–4–3(a).

3. IC 35–42–4–3(a) and IC 35–41–5–1(a) (1982).

ten years on the attempted class B child molesting conviction. Counts one, two, five and seven were to be served consecutively and to run concurrently with counts three, four, six and eight, which were to run consecutively.

## ISSUES

Duffitt appeals, raising seven issues, which we restate as:

1. Was Duffitt denied a fair trial because the trial court, before trial, hung children's pictures and posters throughout the courtroom?

2. Was Duffitt denied a fair trial due to the trial court's comments during trial?

3. Did the trial court err in denying Duffitt's motion to be examined by a psychiatrist?

4. Did the trial court err in denying Duffitt's motion for psychiatric examinations of the victims?

5. Was there sufficient probative evidence to support the convictions?

6. Was Duffitt denied a fair trial due to alleged impropriety on the part of a deputy prosecutor?

7. Did the trial court err in ordering an aggravated sentence?

ISSUE ONE—Was Duffitt denied a fair trial because the trial court hung children's pictures and posters throughout the courtroom?

PARTIES' CONTENTIONS—Duffitt urges that the trial court's conduct in hanging the pictures denied him a fair trial because the pictures caused the jury to react in a parental fashion toward the victims and because the conduct undermined his presumption of innocence.

The response by the State is that the trial court acted within its discretion and was only attempting to put the witnesses at ease while they testified. The State adds that any possible error was cured by the trial court's final instruction.

CONCLUSION—No reversible error occurred by the trial court's hanging of children's pictures and posters in the courtroom.

Before trial, the trial court placed children's posters and paintings throughout the courtroom, as shown in Duffitt's exhibits. *Record* at 435–441. The trial court explained that this decorative effect was intended to lessen the anxiety of some of the young witnesses testifying in the case. *Record* at 177, 776.

A trial court has wide discretion in managing the conduct of a trial, and we will not disturb the trial court's discretion unless a defendant demonstrates he was so prejudiced by the conduct that an abuse of discretion is manifest. *Green v. State* (1984), Ind., 461 N.E.2d 108. It is the trial court's responsibility to conduct the trial in a manner which facilitates the ascertainment of truth, insures fairness, and maintains economy of time and effort. *See Armstrong v. State* (1986), Ind., 499 N.E.2d 189; *Mahla v. State* (1986), Ind., 496 N.E.2d 568.

It appears from the record that the reason for hanging the posters and pictures was to create an atmosphere familiar to young children which might encourage them to testify more freely. *See record* at 177–776. Although this procedure was somewhat unusual, the drawings were not referred to in any way by the trial judge or the prosecutor in the presence of the jury during the trial. The trial court did grant a motion by Duffitt to remove the pictures when the older witnesses were testifying.

Courts in other jurisdictions have also recognized the trial court's discretion in matters which, although unusual, are intended to place a witness at ease. *See State v. Bolton* (1981), La., 408 So.2d 250 (within trial court's discretion to allow grandfather of witness to stand by him while he testified); *Brooks v. State* (1975), 24 Md.App. 334, 330 A.2d 670 (no abuse of discretion in trial court's allowing clergy to sit by witness while she testified regarding details of rape); *People v. Joseph* (1983), 59 N.Y.2d 496, 465 N.Y.S.2d 915, 452 N.E.2d 1243 (within trial court's discretion to exclude public from courtroom because victim-witness was tense and uncomfortable); *Mosby v. State* (1985), Tex.Ct.App., 703 S.W.2d 714 (neither exclusion of general

public from courtroom during eleven-year-old's testimony in order to protect witness from embarrassment or intimidation nor allowing victim to sit in guardian ad litem's lap in absence of jury constituted prejudicial error).

■ Unusual courtroom decorum does not necessarily require a new trial. In *People v. Knapp* (1985), 113 A.D.2d 154, 495 N.Y.S.2d 985, *cert. denied* —— U.S. ——, 107 S.Ct. 158, 93 L.Ed.2d 97, the defendant's trial was held in the church hall of the Roman Catholic Church which was decorated with religious pictures and artifacts, including a crucifix. The court held that the defendant was not denied a fair trial as the effect of the religious environment on the jurors was uncertain and because the jury was as likely to be honest and fair as it was to be prejudiced. *Id.* Similarly, beginning a trial with a prayer regarding the lawlessness of society does not necessarily produce an unfair trial. *See U.S. v. Walker* (4th Cir.1982), 696 F.2d 277, *cert. denied*, 464 U.S. 891, 104 S.Ct. 234, 78 L.Ed.2d 226. In *People v. Cerda* (1967), 254 Cal.App.2d 16, 61 Cal.Rptr. 784, the court concluded that the trial court's direction to a witness to say "hello" to her husband after she testified was not reversible error, as the jury was still able to fairly carry out its duty.

These cases lend support for our conclusion that any error in the trial court's decision to decorate the courtroom does not necessarily call for a new trial.

Duffitt's authority is not persuasive. In *Murray v. State* (1917), 19 Ariz. 49, 165 P. 315, the trial court allowed a blackboard to stand in the courtroom which showed the court's calendar for the day, indicating to the jury that the defendant, charged with illegally transporting liquor, was also charged in three other cases. The trial judge also allowed twenty cases of whiskey to be placed in the courtroom, although the character and existence of the whiskey was not at issue. The reviewing court found these exhibits clearly prejudicial to the defendant, although not sufficient to mandate reversal. In *State v. Gevrez* (1944), 61 Ariz. 296, 148 P.2d 829, reversible error

occurred when the deceased's mother was allowed to sit within four to five feet of the jury, "weeping bitterly" throughout the trial and occasionally standing to make emotional outbursts. In contrast to the case before us, these cases show clear prejudice to the defendants' rights to a fair trial through intentional trial tactics, rather than innocuous conduct by the trial judge intended to aid in eliciting the truth.

In *State v. Swenson* (1963), 62 Wash.2d 259, 382 P.2d 614, also cited by Duffitt, a pregnant witness demonstrated a delicate emotional and physical state which hampered thorough cross-examination and also elicited comments by the trial judge showing concern for her health. The reviewing court focused on the importance of effective cross-examination and the unique facts of the case in concluding that a fair trial had not occurred. *Id.* The same concerns are not present here. We also do not view Duffitt's reference to case law concerning the effects of defendants appearing in court in shackles as sufficiently analogous to lend support to Duffitt's request for a new trial.

■ Any possible prejudice that might have resulted from the displayed materials would have been cured by the trial court's admonishment to the jury in Final Instruction No. 2:

During the times that young children have testified in this cause, the Court has permitted various decorations or placards to be placed in the Court room [sic]. This was done in an effort to reduce their level of anxiety at the prospect of testifying in order that they might testify more freely. It is not to be taken by you as an indication, one way or the other, of the Court's feelings on the merits of the case and it is not to be considered by you in arriving at a decision in this case.

*Record* at 177. A trial court's admonishment to the jury is presumed to cure any prejudice caused during trial. *See Broadus v. State* (1986), Ind., 487 N.E.2d 1298. The added decor was not brought into the proceedings directly; the court's admonishment along with the testimony of numerous witnesses was more than enough to

cure any harmless error that might have occurred. The trial court also specifically instructed the jury as to its duty to judge the credibility of witnesses, the state's burden of proof, and that none of the trial court's actions should be interpreted to indicate the court's opinion as to how the jury should decide the case. *See record* at 144–45. Duffitt was not denied a fair trial.

ISSUE TWO—Was Duffitt denied a fair trial due to the trial court's comments during trial?

PARTIES' CONTENTIONS—Duffitt asserts that various comments interjected into the trial by the trial court expressed a lack of impartiality by the trial court, therefore denying Duffitt a fair trial.

The counter argument is that the trial court may intervene during the questioning of witnesses, and that the trial court's remarks were either allowable or harmless error.

CONCLUSION—Duffitt was not denied a fair trial due to various statements made by the trial court during the trial.

Duffitt concedes that he did not object to any of the alleged improper statements of the trial court, but asserts that this issue cannot be waived because the conduct amounted to fundamental error.

A general principle of appellate review requires a prompt objection to alleged improper conduct by the trial court in order to preserve the issue on appeal. *See Lahrman v. State* (1984), Ind.App., 465 N.E.2d 1162, *trans. denied.* However, there is authority in this state for the proposition that the fundamental error doctrine applies to allegations of improper judicial intervention in criminal trials. *See Decker v. State* (1987), Ind.App., 515 N.E.2d 1129 (quoting *Kennedy v. State* (1972), 258 Ind. 211, 280 N.E.2d 611). *But see Lahrman, supra,* and cases cited therein. So even though Duffitt failed to object, his claim of fundamental error could arguably apply. Our review, however, indicates no fundamental error occurred.

■ Duffitt's basic complaint relates five separate instances when the trial court interjected a comment into the trial. It is

the trial court's duty to refrain from making unnecessary comments and to remain impartial. *Marbley v. State* (1984), Ind., 461 N.E.2d 1102. The first alleged improper comment by the trial court consisted of calling L.R. "honey" when asking her to repeat an answer. This would appear to be an incidental, innocent, and a non-prejudicial statement. · *See Brackens v. State* (1985), Ind., 480 N.E.2d 536 (statement made by trial court to victim of child molestation was made merely to reassure victim while testifying, and was "relatively innocuous"); *Vedron v. State* (1975), 163 Ind. App. 28, 321 N.E.2d 847 (trial court's statement to rape victim to take time, that no one would hurt her, and that she should not be embarrassed was not prejudicial, but only evidenced that the trial court was acting compassionately in attempting to put the witness at ease). The trial court's statement here falls within these cases.

■ Nor did the other comments by the trial court evidence partiality on the trial court's behalf. Duffitt objects to comments the trial court made to clarify statements that witnesses had just stated. *Record* at 473, 492. The trial court may intervene in the questioning of witnesses in order to promote clarity or to dispel obscurity. *Fox v. State* (1986), Ind., 497 N.E.2d 221. In this case, the trial court was merely clarifying the previous statement made by the witness in an impartial manner. Also, the trial court's statement made to the child victim, *see record* at 353, was also an impartial statement made to assist the testimony of the victim, which a trial court may do. *McManus v. State* (1982), Ind., 433 N.E.2d 775.

■ Finally, in response to defense counsel's request to approach the bench, the trial court stated "Members of the jury we have got a little trouble here we have got to work on, so we will have you back in just a minute." *Record* at 499. Contrary to Duffitt's assertion that defense counsel was "demeaned in the presence of the jury", the trial court was merely explaining the procedure to the jury. The jury had also been instructed that the lawyers had a duty to make objections, and that such

objections should not prejudice the jury against any lawyer. *Record* at 145. Thus, we conclude that none of these comments denied Duffitt fundamental due process or his right to a fair trial. *See Brady v. State* (1984), Ind., 463 N.E.2d 471.

ISSUE THREE—Did the trial court err in denying Duffitt's motion to be examined by a psychiatrist?

PARTIES' CONTENTIONS—Duffitt's argument is that the trial court abused its discretion in failing to appoint a psychiatrist after he filed a suggestion of incompetency.

The State urges that Duffitt failed to provide a sufficient record for this court to review the issue and further, that the trial court acted within its discretion.

CONCLUSION—The trial court did not err in denying Duffitt's request for a psychiatric examination.

■ The trial court is required to appoint psychiatrists to examine a defendant only if "the court has reasonable grounds for believing that the defendant lacks the ability to understand the proceedings and assist in the preparation of his defense...." IC 35–36–3–1(a) (Supp.1987). If the trial court does not find reasonable grounds exist, the appointment of psychiatrists is not required and we will review the court's determination only for abuse of discretion. *Dudley v. State* (1985), Ind., 480 N.E.2d 881; *Powell v. State* (1982), Ind., 440 N.E.2d 1114.

The record reveals that the trial court heard evidence on the matter and found no evidence of incompetency, thereby denying Duffitt's motion. *Record* at 81. Duffitt has failed to provide us with any evidence presented to the trial court which supports his claim. We must presume the trial court properly observed Duffitt's demeanor, considered the evidence, and determined that Duffitt was competent to stand trial. *See Timmons v. State* (1986), Ind., 500 N.E.2d 1212; *Powell, supra.*

Additionally, Duffitt testified at trial in his own behalf, and his testimony revealed he had a factual comprehension of the proceedings, and was able to assist adequately in his own defense. *See Landers v. State*

(1984), Ind., 464 N.E.2d 912; *Powell, supra.* The trial court did not abuse its discretion.

ISSUE FOUR—Did the trial court err in denying Duffitt's motion for psychiatric examinations of the victims?

PARTIES' CONTENTIONS—Duffitt argued for psychiatric examinations of the victims because they allegedly had been pressured into testifying in a certain manner and might fabricate stories due to sexual fantasies or moral delusions.

The State again contends that the trial court acted within its discretion because Duffitt based his motion on inconsistencies in the victims' statements, which is insufficient to support a psychiatric exam.

CONCLUSION—The trial court did not err in denying Duffitt's motion to have a psychiatrist examine the victim-witnesses, all of whom were ten years of age or older when testifying.

■ Generally, a witness is presumed competent to testify, subject to certain exceptions. *See* IC 34–1–14–5 (1982); *see also Mengon v. State* (1987), Ind., 505 N.E.2d 788. When a witness's competency to testify is placed in issue, the trial court must schedule a hearing to determine whether the witness is in fact competent. *Mengon, supra.* At that time, if the evidence indicates that the competency of the witness is questionable the trial court should order the witness to be examined by psychiatrists. *Id.* This court will review the trial court's determination of competency only for abuse of discretion. *Id.*

■ Before trial, the trial court entertained Duffitt's argument regarding the motion for psychiatric exam of the victims. The trial court denied the motion on the basis that Duffitt was merely pointing out potential inconsistencies in the children's testimonies, and that he had provided no further evidence justifying a finding of incompetency. *Record* at 280–81. The record bears out the trial court's conclusion. Duffitt's contentions on appeal amount to nothing more than pointing to inconsistencies in testimony. *See Allen v. State* (1972), 152 Ind.App. 284, 283 N.E.2d

557 (trial court did not err in denying defendant's motion for psychiatric exam of prosecutrix for the purpose of determining her credibility). If there is no showing of grounds for incompetency, the defendant is not entitled to a psychiatric examination of a witness. *Neaveill v. State* (1985), Ind. App., 474 N.E.2d 1045. It has also been held that a defendant has no right, in a sex offense case, to subject a victim to a psychiatric examination. *Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304. For these reasons, we conclude the trial court did not abuse its discretion in denying Duffitt's motion.

ISSUE FIVE—Was there sufficient probative evidence to support the convictions?

PARTIES' CONTENTIONS—Duffitt complains that the convictions were based solely on uncorroborated testimony of each victim. In addition, he specifically asserts that the State failed to establish the date on which one incident occurred and also failed to prove venue.

The State reiterates the evidence, arguing its sufficiency to support the convictions. It adds that the time of the offense was properly proven, and that Duffitt waived any argument regarding venue.

CONCLUSION—The state put forth sufficient evidence to support the child molesting convictions.

■ Each of the victims testified at trial regarding a specific act which formed the basis of the child molesting charges. Uncorroborated testimony of victims is sufficient evidence to support a child molesting conviction. *See Maynard v. State* (1987), Ind., 513 N.E.2d 641. As to alleged inconsistencies in statements of various witnesses, this court will not reweigh that evidence or judge credibility of the witnesses. *Ingram v. State* (1987), Ind., 508 N.E.2d 805. The facts recited earlier constitute substantial evidence of probative value to support the convictions.

■ When time is not of the essence, the state may prove that the crime occurred within the statute of limitations or at any time prior to the filing of the information. *See Phillips v. State* (1986), Ind.

App., 499 N.E.2d 803. The State proved that the offense against L.R. occurred in May of 1982. As this was within the statutory time period, (see IC 35-41-4-2 (Supp. 1987)), there was no error.

■ Duffitt failed to raise his objection regarding venue at any time during the trial, or in his motion to correct errors, and thus it is waived. *Burgess v. State* (1984), Ind., 461 N.E.2d 1094; *Scalf v. State* (1981), Ind.App., 424 N.E.2d 1084. Additionally, the State may prove venue by circumstantial evidence. *Boze v. State* (1987), Ind., 514 N.E.2d 275. Here, there was evidence that the molestations occurred at Duffitt's home in Elwood, in Duffitt's car following a trip to the skating rink in Alexandria, in his car following a drive to a Dairy Queen in Elwood, and on the way back to Alexandria from Anderson. *Record* at 333-40, 357-362, 377, 383-85, 421, 425, 456, 472, 475, 509, 518, 603, 614, 627. This was sufficient circumstantial evidence to establish venue in Madison County.

ISSUE SIX—Was Duffitt denied a fair trial due to alleged impropriety on the part of a deputy prosecutor?

PARTIES' CONTENTIONS—An appearance of impropriety requiring a new trial resulted, Duffitt argues, when the deputy prosecutor who filed four charges of child molesting against Duffitt also represented the father of two of the victims in a civil proceeding at an earlier time.

The answer is that Duffitt failed to establish how the prosecutor's conduct prejudiced his rights.

CONCLUSION—Duffitt has waived this argument by failing to provide any citation of authority or cogent argument.

■ Ronald L. McNabney (McNabney) represented M.R., the father of L.R. and S.R., in 1984 in a civil action to regain custody of the children from their mother. Later that year, McNabney, as deputy prosecutor, approved the filing of four of the child molesting charges against Duffitt. Duffitt now claims that McNabney acted improperly by representing M.R. in the civil action and subsequently obtaining

the presence of L.R. and S.R. in Madison County so that they could be interrogated regarding the charges against Duffitt.

Duffitt simply fails to explain how McNabney's representation of M.R. in a separate civil action regarding child custody, and his subsequent approval of the filing of child molest charges against Duffitt after a separate investigation, prejudiced Duffitt. The issue is therefore waived. *See Mengon, supra.*

ISSUE SEVEN—Did the trial court err in ordering an aggravated sentence?

PARTIES' CONTENTIONS—Duffitt contends the trial court failed to set forth adequate reasons for imposing consecutive sentences.

The State's response is that the trial court set forth a sufficient statement of factors to support the enhanced sentence.

CONCLUSION—The trial court did not err in sentencing Duffitt to consecutive sentences.

We will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable in light of the nature of the offense and character of the accused. *Mahla, supra;* Ind.Rules of Procedure, Appellate Review of Sentences, Rule 2. It is within the trial court's discretion to increase a sentence due to aggravating factors. *Barker v. State* (1987), Ind., 508 N.E.2d 795. While the statutory factors listed in IC 35–38–1–7(b) (Supp.1987) serve as guidelines for the trial court, the court is not limited to those considerations in imposing a sentence. *Guenther v. State* (1986), Ind., 501 N.E.2d 1071.

■ Here, the trial court listed one statutory consideration, that the imposition of a lesser sentence would depreciate the seriousness of the offense, to support the sentence. *See* IC 35–38–1–7(b)(4). The trial court also stated facts peculiar to Duffitt when he cited that Duffitt had expressed no remorse for molesting five young girls, and that the evidence "disclosed a pattern of willful, deliberate and systematic moles-

tation of young girls." *Record* at 215, 221. Contrary to Duffitt's assertion, lack of remorse is a proper consideration in imposing an increased sentence. *See Brooks v. State* (1986), Ind., 497 N.E.2d 210; *Coleman v. State* (1980), Ind.App., 409 N.E.2d 647. The trial court is only required to list one valid aggravating factor in order to support the enhancement. *Guenther, supra.* The trial court listed proper reasons for increasing the sentence, and we cannot conclude that the imposition of consecutive sentences was improper in light of the evidence.

The trial court's judgment is affirmed.

CONOVER, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

I concur in the affirmance of the convictions upon all eight counts and the sentence imposed upon each count. However, I write to voice reservations with respect to Issues One and Seven as treated in the majority opinion.

## ISSUE ONE

### DECORATION OF COURTROOM INITIATED BY TRIAL JUDGE AND IN PARTICIPATION WITH PROSECUTING WITNESSES

One or more of the victims who were to testify during the trial assisted the trial judge in decorating the courtroom in an apparent effort to make all of the children who would testify more comfortable and at ease in the presentation of their testimony against defendant. This joint effort, initiated by the trial judge was wholly improper. The trial judge has a duty to remain impartial. He should not take it upon himself to determine that witnesses need protection nor should he fashion such protection. *See Wagner v. State* (1985) Ind., 474 N.E.2d 476, 489.[1]

---

1. The lack of impartiality was also arguably demonstrated, albeit outside the presence of the jury, when in recantation of a witness separation order, the trial judge permitted some of the children who had earlier testified to be present in the courtroom "to lend some support to PJ"

To be sure, the judicial system has recognized the disability, in terms of trauma and intimidation, visited upon children of tender years called upon to appear in an austere courtroom before and with adults to speak about "unspeakable" things. Various measures, such as anatomically correct dolls, reliable out-of-court statements, etcetera, have been devised to make that occasion promotive of factual accuracy. The judicial system wishes to foster an accurate gathering of the evidence without undue intimidation or trauma to the child. The atmosphere, however, must remain as neutral as it can possibly be made. The court itself is a vital aspect of that neutrality. The judge himself must remain neutral. He should not allow the surroundings, or the system, or the trial participants to intimidate or be ingratiating. Certainly, he should not do so himself. The activities of the judge in this instance severely compromised the appearance, if not the fact, of his neutrality.

Even though the extent of the judge's activity and the pre-trial participation of one or more of the witnesses were not known to the jury, the accoutrements may have done more than merely place the children at ease. As proffered by appellant, the environment may well have encouraged the jurors to react in a particularly favorable, parental, and protective way toward the young female complainants.

At least two of the cases from foreign jurisdictions mentioned in the majority opinion acknowledge the strong potential for prejudice and observe that practices of this kind are not to be encouraged. *State v. Bolton* (1981) La., 408 So.2d 250; *Brooks v. State* (1975) 24 Md.App. 334, 330 A.2d 670.

I do not believe that the jury admonishment served to cure any prejudice which may have been created in the minds of the jury. To the contrary, it specifically advised that the posters were designed to render the testimony of the children more free and to remove their anxiety. Such advisement was susceptible to an interpretation that the testimony was more credible than it might otherwise have been.

(Record at 416), one of the victims then being

The invitation to extraneous considerations by the jury is too likely to be accepted and the resulting prejudice to a defendant too possible. In my view, the decorative state of the courtroom, coupled with the manner in which it was achieved and with the "admonishment" constituted clear error.

However, I must concur with my colleagues that under the circumstances, the error is not cause for reversal. Even absent the extraneous influences no reasonable trier of fact would have reached a contrary result upon any one or more of the charges.

## ISSUE SEVEN

## LACK OF REMORSE AS AGGRAVATING FACTOR FOR SENTENCING PURPOSES

When a defendant has consistently maintained his innocence throughout the proceedings, it is inappropriate to use this "lack of remorse" as a consideration in enhancing the sentence or in imposing consecutive sentences. To do so is tantamount to requiring a defendant to admit guilt after trial and before sentencing. It seems to me that such state of affairs gives rise to a virtual assurance of affirmance upon appeal unless the defendant-appellant successfully claims fundamental due process error. An admission of guilt renders it difficult, if not impossible, to demonstrate prejudice.

To be sure, a clear showing of lack of remorse may greatly exceed a continued claim of innocence. When that takes place, it is no doubt appropriate to view the disdain or recalcitrance as indicative of the need for greater corrective treatment and/or of the likelihood that defendant will commit other crimes in the future. *Coleman v. State* (1980) 2d Dist. Ind.App., 409 N.E.2d 647.

In *Brooks v. State* (1986) Ind., 497 N.E.2d 210, our Supreme Court noted that the manner in which the defendant demonstrated his "lack of remorse" was particu-

called to the witness stand.

larly hostile and in the words of the trial judge showed "disdain for authority." To the same effect is *Mahla v. State* (1986) Ind., 496 N.E.2d 568.

Standing alone, "lack of remorse" as here involved, i.e., as a euphemism for a claim of innocence, is not sufficient basis for imposition of consecutive sentences totaling thirty years. *Dockery v. State* (1987) 4th Dist. Ind.App., 504 N.E.2d 291. *But see Mullens v. State* (1983) Ind., 456 N.E.2d 411, in which the only clear demonstration of "lack of remorse" was defendant's failure to testify in his own defense or in explanation of his acts but in which our Supreme Court opined that the trial judge might have discerned a lack of remorse from "other" unspecified circumstances.

In *Pope v. State* (1983) Fla., 441 So.2d 1073, 1078, the Florida Supreme Court well characterized the danger:

> "Unfortunately, remorse is an active emotion and its absence, therefore, can be measured or inferred only from negative evidence. This invites the sort of mistake which occurred in the case now before us—inferring lack of remorse from the exercise of constitutional rights. This sort of mistake may, in an extreme case, raise a question as to whether the defendant has been denied some measure of due process, thus mandating a remand for reconsideration of the sentence. For these reasons, we hold that henceforth lack of remorse should have no place in the consideration of aggravating factors."

Other jurisdictions recognize the problem and likewise preclude consideration of "lack of remorse" in the sense of guilt denial as a sole or determinative factor. *See e.g. State v. Carriger* (1984) 143 Ariz. 142, 692 P.2d 991, *cert. denied* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864; *People v. Key* (1984) 4th Dist., 153 Cal.App.3d 888, 203 Cal.Rptr. 144; *Colesanti v. State* (1984) 60 Md.App. 185, 481 A.2d 1143, *cert. denied* 302 Md. 570, 489 A.2d 1129; and *Thomas v. State* (1983) 99 Nev. 757, 670 P.2d 111.

My position in this regard is not modified by the three most recent Indiana decisions which I have found upon the issue. In *Seeley v. State* (1987) 1st Dist. Ind.App., 504 N.E.2d 309, the court seriously questioned whether the "unequivocal stance of innocence" could constitute lack of remorse as an aggravating circumstance but noted other aggravating circumstances set forth by the sentencing judge. Similarly, in *Hughes v. State* (1987) 1st Dist. Ind.App., 508 N.E.2d 1289, *trans. denied,* other aggravating factors were present in addition to "lack of remorse." Finally, in *Linger v. State* (1987) 4th Dist. Ind.App., 508 N.E.2d 56, the court held that denial of guilt may not be considered as an aggravating factor.

Be that as it may, the trial court here recited other aggravating factors in support of the consecutive sentences. The sentences do not, therefore, rest solely upon the "lack of remorse." For this reason I concur with the majority in refusing to reverse for sentencing error.

Subject to the above observations, I concur in the affirmance of the judgment.